## Richmond

### JESSIE N. WICKS v. CITY OF CHARLOTTESVILLE.

October 14, 1974.

Record No. 740266.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*F. Guthrie Gordon, III (Lowe & Gordon,* on brief), for plaintiff in error.

*Richard H. Barrick, Commonwealth's Attorney for the City of Charlottesville,* for defendant in error.

Harrison, J., delivered the opinion of the court.

Involved here is § 19-44 of the City Code of Charlottesville which provides:

"No person shall indecently expose himself, or do any obscene act, or write obscene language, or make obscene marks or drawing on any wall, fence or other thing, or address any

obscene, lewd or profane language or words to another, or make use of such language within the hearing of another."

Jessie N. Wicks was arrested, charged and convicted of unlawfully having exposed himself indecently in public, in the City of Charlottesville on October 14, 1973, in violation of the above ordinance. Defendant's punishment was fixed at a fine of $15, and costs, and he appealed the order of conviction.

The evidence clearly established that Wicks, in daylight, on a Sunday afternoon, intentionally exposed himself and urinated on a public street in the presence of others.[1] This constituted an act of gross and open indecency, injurious to public morals and indictable at common law. The defendant gave no explanation or reason for his actions, and there is no suggestion that he was acting *in extremis*. In *Noblett* v. *Commonwealth*, 194 Va. 241, 245, 72 S. E. 2d 241, 243 (1952), Mr. Justice Eggleston, later Chief Justice, made an exhaustive examination of the authorities defining common law obscenity and in his opinion said:

"In 67 C. J. S., Obscenity, § 5, p. 25, the author says: 'Indecent exposure in a public place in such a manner that the act is seen or is likely to be seen by casual observers is an offense at common law, and is made an offense by a number of statutes and ordinances. * * *' The text is fully supported by the cited cases. [Citing authorities.]

"Ordinarily, although not necessarily, the place where the exposure is made must be public. Indecent exposure on a street or public highway 'so that one person sees, and others

---

[1] It was stipulated that Officer D. L. Roberts of the Charlottesville City Police Department testified that:

"Between the hours of 2:00 and 3:00 p. m. on the afternoon of Sunday, October 14, 1973, Officer Roberts observed a subject walking along 5th Street N. E., a public street, in Charlottesville from the Monticello Hotel toward Market Street. Officer Roberts observed a trail of liquid forming on the sidewalk as the subject walked. Officer Roberts approached the subject and saw that the subject, whom he identified as the defendant Jessie Nathaniel Wicks, was holding his hand in front of his trousers and the subject was urinating. When Officer Roberts approached, the defendant recovered himself and zipped up his pants. The subject told Officer Roberts he had just left work at the Monticello Hotel at the corner of 5th and Jefferson Street. Officer Roberts testified that there were lavatory facilities at the Hotel, less than a block from where the Defendant was observed.

"Upon cross-examination, Officer Roberts said he could not be certain that he had actually seen defendant's organ because his hand was covering it. The officer could not say whether anyone in the vicinity had actually seen what had happened, but there were some people on the street."

passing by can see, is an offense' at common law. 67 C. J. S., Obscenity, § 5, p. 26."

The evidence amply supports the finding of the lower court that the defendant violated so much of Charlottesville City Code § 19-44 as provides "[n]o person shall indecently expose himself, . . ." "Indecent exposure" is defined in *Webster's Third New International Dictionary* 1147 (1966), as: "[I]ntentional exposure of part of one's body (as the genitals) in a place where such exposure is likely to be an offense against the generally accepted standards of decency in a community". In *Black's Law Dictionary* 909 (4th ed. 1951), "indecent exposure" is defined as: "Exposure to sight of the private parts of the body in a lewd or indecent manner in a public place. It is an indictable offense at common law, and by statute in many of the states. . . ."

As was observed in *Noblett v. Commonwealth, supra,* "[a]n intentional exposure on a public street where it is likely to be seen by casual observers, whether actually seen by a single person or by several, is an act of 'gross and open indecency, injurious to public morals' ". 194 Va. at 246, 72 S. E. 2d at 244.[2] We construe the first six words of Charlottesville City Code § 19-44 as contemplating an intentional and indecent exposure in a public place where it is likely to be seen, whether actually seen by one or several persons.

Such construction is consistent with the common law, and we have held that "the best construction of the statute is, to construe it as near to the reason of the common law as may be, . . ." *Chichester v. Vass,* 5 Va. (1 Call) 83, 102 (1797). The reason is that the Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.

The term "indecent exposure" had a precise, well defined meaning at common law, and the Charlottesville ordinance

---

[2] Virginia Code § 18.1-236 provides that:

"Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a misdemeanor."

under review specifically uses the language "indecently exposed", thereby giving the offense its common law name. We therefore conclude that so much of the ordinance as prohibits what is a common law offense, "indecent exposure", is not vague, overbroad, or otherwise invalid as applied to the conduct charged against Wicks.

▮ Charlottesville City Code § 1-3 provides that each portion of the City Code is severable for purposes of constitutional analysis. Therefore so much of the ordinance as describes the common law offense of indecent exposure can be and is severed from the rest of the ordinance which may be subject to valid objections.

The purpose of a saving provision in a statute or ordinance, declaring that the unconstitutionality of parts shall not affect the remainder, is to reverse the presumption that the Legislature intended an act to be effective as an entirety and that it is inseparable. When there is such a savings clause the presumption is that the statute is separable and that the valid portion may stand even though a portion is invalid. *Hannabass* v. *Maryland Cas. Co.*, 169 Va. 559, 194 S. E. 808 (1938).

It has been held that severability does not apply unless it is clear that the law-making body would be satisfied with what remains after the invalid part of a statute or ordinance is eliminated. *Boyles* v. *Roanoke*, 179 Va. 484, 19 S. E. 2d 662 (1942). We conclude that in adopting the ordinance involved here it was the intent of the council of Charlottesville to make "indecent exposure" a criminal offense, although it was included in a city code section which purported to describe numerous acts of obscenity which it also attempted to make criminal offenses.

The defendant, relying upon *Coates* v. *Cincinnati*, 402 U. S. 611 (1971), and *Owens* v. *Commonwealth*, 211 Va. 633, 179 S. E. 2d 477 (1971), argues that he has standing to raise the vagueness or unconstitutional overbreadth of the ordinance involved here and says that it is facially invalid. However, Wicks has been charged and convicted of indecent exposure, an offense which we hold is properly described and encompassed by the first six words of the ordinance. Assuming we agreed that the remaining portion of the ordinance is invalid, defendant would reap no benefit from such a holding. The residue of the ordinance poses no threat to him, and he does not have standing to question its

validity as it may be applied to others. Such validity is therefore a matter we do not reach in this case.

■ Defendant also attacks Code § 14.1-184.1 which provides that if a defendant is convicted the amount allowed by the court to the attorney appointed to defend him shall be taxed against the defendant as a part of the costs of the prosecution. He argues that the assessment of attorney's fees against indigent defendants has an impermissible chilling effect on their right to counsel. He also argues that the assessment deprived him of property without due process of law because it required him to pay for a right to which he was constitutionally entitled.

In *Fuller* v. *Oregon*, 417 U. S. 40 (1974), the Supreme Court considered a statutory scheme of taxing a convicted defendant for the cost of appointed counsel. The court approved the Oregon statute, observing that it was designed to insure that only those who actually became capable of repaying the state will ever be obliged to do so. The Supreme Court disapproved a Kansas statute in *James* v. *Strange*, 407 U. S. 128 (1972), because the statute deprived an indigent defendant of the protective exemptions available to other civil judgment debtors. In the opinion Mr. Justice Powell noted that:

"The Kansas statute is but one of many state recoupment laws applicable to counsel fees and expenditures paid for indigent defendants. . . . In Virginia and West Virginia, the amount paid to court-appointed counsel is assessed only against convicted defendants as a part of costs, although the majority of state recoupment laws apply whether or not the defendant prevails. It is thus apparent that state recoupment laws and procedures differ significantly in their particulars. Given the wide differences in the features of these statutes, any broadside pronouncement on their general validity would be inappropriate." 407 U. S. at 132-33.

In *Commonwealth* v. *McCue*, 109 Va. 302, 304, 63 S. E. 1066, 1067 (1909), we said:

"More than fifty years ago this statute was considered by this court, and the character of the obligation thereunder of a person convicted of crime to the Commonwealth for the costs incident to his prosecution and conviction was discussed and defined to be an exaction, 'simply for the purpose of

reimbursing to the public treasury the precise amount which the conduct of the defendant has rendered it necessary should be expended for the vindication of the public justice of the State and its violated laws. It is money paid, laid out and expended for the purpose of repairing the consequences of the defendant's wrong. It is demanded of him for a good and sufficient consideration, and constitutes an item of debt from him to the Commonwealth. Payment of costs is no part of the sentence of the court, and constitutes no part of the penalty or punishment prescribed for the offense. Indeed, our statute expressly declares that the laws of costs shall not be interpreted as penal laws; they are to be construed as remedial statutes, and liberally and beneficially expounded for the sake of the remedy which they administer. The right to enforce payment of them is a mere incident to the conviction, and thereby vested in the Commonwealth for the sole purpose of replacing in the treasury the amount which the defendant himself has caused to be withdrawn from it.' *Anglea's case*, 10 Gratt. 696, 701."

*See also Kincaid* v. *Commonwealth*, 200 Va. 341, 105 S. E. 2d 846 (1958), where we held that to tax the cost of the jury to a defendant in a criminal case works no deprivation of a constitutional right.

It is entirely proper, and a constitutional requisite, that an indigent defendant be represented by court-appointed counsel. However, we can perceive no valid reason why, if the defendant is convicted, the cost of such representation should not be taxed as a part of the cost of the prosecution, treated as any other debt and collected of the convicted defendant at a later date if and when he becomes able to pay. The Code of Virginia abounds with statutes providing debtors, judgment and otherwise, with exemptions from execution, attachment, garnishment and distress. See Vol. 11, Code of Virginia, Index, pp. 138-39-40-41-42 and specifically see Code of Virginia, Title 34, §§ 34-1 through 34-33. These statutes afford equal treatment and are adequate to protect any debtor from hardship, and from oppression or overreaching by a creditor. They are not discriminatory and do not penalize any judgment debtor of the Commonwealth.

Appellant's reference to Code §§ 34-4 and 34-5 is inapposite. Code § 34-4 entitles a head of a family to select and hold exempt

from levy and sale, *on any demand for a debt or liability on contract,* property not exceeding a certain value. Code § 34-5 provides that this exemption shall not apply in certain cases including claims for taxes and legal and taxable fees of any public officer or officer of the court. A judgment rendered against a defendant for court costs in a criminal case, when there is a conviction, is not rendered on any demand for a debt or liability contracted by him. *See Whiteacre, Sheriff* v. *Rector and Wife,* 70 Va. (29 Gratt.) 714, 715 (1878).

We are neither impressed nor persuaded by the argument that the possibility that at some future date a convicted criminal might be called upon to repay the state an attorney's fee, incurred in his defense of the commission by him of a criminal act, "chills" the exercise of his constitutional entitlement to legal representation. Significantly, the defendant here did not experience any "chill" prior to his conviction, for the record shows that he made an affidavit of indigency and requested the court to appoint counsel for him. It was only after conviction and on appeal that he manifested the concern he now expresses.

The federal and state Constitutions assure every accused a fair trial before an impartial tribunal, and this includes the right to court-appointed counsel for indigents. But no court has yet held that every constitutional right or privilege should be available to all persons without any cost or obligation on their part. Free legal service for all may be the ultimate, but if so it must come by legislation, or from some source other than by judicial fiat of this court.

The judgment of the lower court is

*Affirmed.*