**Salem**

MICHAEL WAYNE CLINEBELL

v.

COMMONWEALTH OF VIRGINIA

No. 0870-85

Decided October 21, 1986

COUNSEL

Jonathan S. Kurtin (Harvey S. Lutins, Lutins & Shapiro, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.** — Michael Wayne Clinebell seeks reversal of his convictions for sexually assaulting his daughter, alleging that: (1) the indictments did not sufficiently inform him of the alleged dates of the crimes charged against him; (2) the trial court excluded expert testimony that the victim had been treated for hysterical blindness; and (3) the trial court excluded testimony that the victim had made similar accusations against others. Finding no reversible error, we affirm the convictions.

The daughter, who was twelve years old when these cases were tried, testified that Clinebell, her father, had begun various sexual practices with her in June, 1983, and that they continued through

July, 1984, when the police were notified.

Clinebell was originally indicted on five separate offenses, charging that Clinebell:

FL 84-1344 "[d]uring the month of July, 1984 . . . did unlawfully and feloniously engage in sexual intercourse with . . . [his daughter], a child less than thirteen (13) years of age;"

FL 84-1345 "[d]uring the month of July, 1984 . . . did cause . . . [his daughter], a child less than thirteen (13) years of age, to engage in fellatio;"

FL 84-1346 "[o]n or between June 1, 1984, and July 30, 1984 . . . did unlawfully and feloniously engage in sexual intercourse with . . . [his daughter], a child of less that thirteen (13) years of age;"

FL 84-1347 "[o]n or between June 1, 1983, and July 30, 1984 . . . did cause . . . [his daughter], a child less that thirteen (13) years of age, to engage in fellatio;"

FL 84-1348 "[o]n or between July 1983 and July 1984 . . . did unlawfully and feloniously penetrate the labia majora of . . . [his daughter] with an inanimate object."

On January 16, 1985, the trial court granted Clinebell's motion for an order directing the Commonwealth to file a bill of particulars stating a more limited time period within which the alleged offenses were to have occurred. The Commonwealth filed a response on February 7, 1985, stating: "The offense(s) are alleged to have occurred between July 1983 and July 1984." Two of the indictments, with leave of court, were amended to avoid a double jeopardy problem, with an implicit understanding that, as the indictments now read, Clinebell could be tried and convicted of no more than one offense committed within the period covered by any one indictment, regardless of whether there was proof of a number of similar incidents within a particular period. *See Pine v. Commonwealth*, 121 Va. 812, 93 S.E. 652 (1917).

The third indictment, FL 84-1346, which originally read "on or between June 1, 1984 and July 30, 1984," was amended to read "on or between June 1, 1983 and June 30, 1984." The fourth indictment, FL 84-1347, which originally read "on or between June 1, 1983 and July 30, 1984," was amended to read "on or between June 1, 1983 and June 30, 1984." Clinebell's later trial and convictions were based upon these five indictments.

Clinebell, on appeal, contends that the Commonwealth's failure to provide a meaningful bill of particulars and its amendments of two of the indictments, which actually increased the time span alleged in FL 84-1346, denied him the opportunity to prepare an adequate defense and that the court erred in not quashing the indictments.

■ "No indictment or other accusation shall be quashed or deemed invalid . . . [for] omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense." Code § 19.2-226(6). In a statutory rape case, where the age of the victim is not in dispute, time is not of the essence of the offense charged. *See Waitt v. Commonwealth*, 207 Va. 230, 235, 148 S.E.2d 805, 808 (1966).

■ In addition, it is within the trial court's discretion to grant a defendant's motion for a bill of particulars. *Ward v. Commonwealth*, 205 Va. 564, 569, 138 S.E.2d 293, 296-97 (1964). However, "a bill of particulars should be allowed in a criminal case, if the indictment does not fully charge the offense, to enable a defendant to prepare his defense properly." *Tasker v. Commonwealth*, 202 Va. 1019, 1024, 121 S.E.2d 459, 462-63 (1961).

At the beginning of the trial, when asked if he was ready to proceed, defense counsel stated that he was not because the Commonwealth had not provided specific dates for the offenses. The trial judge stated:

I am ruling that if the Commonwealth can supply you with any additional information, fine, and if they cannot, I will rule on it. Does the Commonwealth have any comment on that?

The Commonwealth's attorney replied:

I did send them a letter telling them after extensive examination with the victim that she cannot recall any specific dates, and because it happened repeatedly during the course of a year, she is very confused as to dates and times . . . and we cannot provide them with anything more specific than we have already given them.

The trial judge asked defense counsel: "All right, other than that, are you ready, Mr. Lutins?" Defense counsel answered: "Yes, sir." Defense counsel did not further object to the ruling of the court or to the trial's proceeding, but he did not waive his objection to the claimed deficiency in the indictments and the bill of particulars.

Clinebell argues that the indictments' lack of specificity of the time period involved prevented him from presenting an adequate defense. At trial, he attempted to show that the alleged incidents of sexual abuse never happened. Clinebell produced evidence that he never had an opportunity to commit the offense even once (an act that was alleged to have occurred many times in the thirteen month period alleged in the indictment) because, although he had full custody of his daughter after divorcing her mother, Clinebell maintained that they were never alone together. Clinebell's mother, who lived in the Town of Vinton, and his girlfriend, with whom he lived during this period, testified that if Clinebell was not at work, one or the other of the women was with the child all of the time. Even if they went on a personal errand and Clinebell was at home and could care for the child, they testified that they took the child with them, never leaving Clinebell alone with his daughter. Clinebell, therefore, was relying upon an alibi-based defense.

Other courts have dealt with this problem of sexual offenses by adults against children and have determined that a case need not be dismissed where there is an impossibility of ascertaining the date of the offense, or where the prosecutor proves the offense occurred at a time different than that alleged in the indictment. *See, e.g., Tincher v. Boles*, 364 F.2d 497 (4th Cir. 1966); *Hayes v. State*, 152 Ga. App. 858, 264 S.E.2d 307 (1980); *Decker v. State*, 139 Ga. App. 707, 229 S.E.2d 520 (1976); *State v. Guffey*, 39 N.C. App. 359, 250 S.E.2d 96 (1979). In *Hayes*, for example, the Georgia Court of Appeals stated that in a crime in which time is

not of the essence of the offense charged, the evidence need only prove that the offense occurred within the statute of limitations period and before the indictment was issued; no specific date of the offense need be shown. *Hayes*, 152 Ga. App. at _____, 264 S.E.2d at 309.

It is in the nature of child abuse cases involving a parent that an alibi defense almost always will be difficult to prove. In most criminal cases, there is no doubt that a crime occurred; the only issue is who committed the crime. An alibi-based defense is offered in such cases to prove that it was impossible for the defendant to have committed the offense because he was not at the scene of the crime during its commission.

The question in most parent-child sexual abuse cases, however, is not who committed the crime, but whether a crime was ever committed. If it was, it will usually be when the parent and child were alone. It is rare indeed that a custodial parent could prove, using an alibi-based defense, that there was never an opportunity for the parent to commit such a crime. This situation is particularly true where the criminal conduct first begins when the child is very young and comes to light only after the child becomes more mature.

In Clinebell's case, there is no dispute that the crime, assuming it occurred, involved a minor child. The allegation of time, therefore, is not of such constitutional import because time was not of the essence of the offense charged. *See Waitt*, 207 Va. at 235, 148 S.E.2d at 808; *see also Arrington v. Commonwealth*, 87 Va. 96, 99, 12 S.E. 224, 225 (1890) (wherein the court held that an indictment alleging that the defendant illegally sold liquor "on a certain day, between the 13th day of September, 1889, and the 12th day of September, 1890" was sufficient to inform the defendant of the time of his offense). While time may not be of the essence in a particular case, it is, nonetheless, preferable and required that the defendant be given as precise a date of the alleged offense as possible. When this matter was ruled upon by the trial judge in Clinebell's case, the judge believed that the Commonwealth had been as specific as it could with respect to the dates in the indictment. Under these facts and circumstances, we find that the trial judge did not abuse his discretion. *See Ward*, 205 Va. at 569, 138 S.E.2d at 297.

The issue involving the expert testimony and other false statements alleged to have been made in the past by the daughter relate to all of the indictments. Defense counsel proffered a transcript of testimony of Dr. Herbert Lewis Keaton, an optometrist, who had testified in a previous trial that he had treated Clinebell's daughter in March, 1982, for hysterical blindness. The transcript was from a trial in which the daughter's grandfather was tried for sexually abusing her. Dr. Keaton expressed the opinion at that trial that although the child believed that she could not see, he determined that she could. He treated her by prescribing a pair of placebo glasses and her vision returned to normal within a few weeks. Defense counsel offered the testimony of the doctor to show that Clinebell's daughter was not a credible witness. The doctor had testified that he "suspected hysterical amblyopia." He treated her beginning March 30, 1982. Her vision was 20/200 when he first saw her. He gave her trial glasses with a minimum prescription which brought her vision to 20/60, which the prescription should not have corrected. Within a week or two her vision returned to 20/20. He testified that persons who suffer from hysteric amblyopia are generally seeking attention. He stated that they are not malingering; they truly believe they cannot see.

The fact that this child may have suffered from hysteric amblyopia in March, 1982, Clinebell argues, is evidence upon which the jury could infer that she was also lying or fantasizing at her trial in 1985 about sexual relationships. The specific reason Clinebell offered the testimony was to show that her desire for attention was a motive to fabricate the allegations against him.

The trial judge denied the evidence because the 1982 condition did not show any motive or scheme to lie that existed at the time of trial in 1985. He also stated that the doctor, an optometrist, was not a psychiatrist and excluded the evidence for both reasons.

The trial judge's decision concerning the proffered testimony of an expert will be sustained on appeal unless it clearly appears that the witness was qualified to render an opinion as an expert. *Landis v. Commonwealth*, 218 Va. 797, 800, 241 S.E.2d 749, 751 (1978) (citing *Jordan v. Commonwealth*, 207 Va. 591, 598, 151 S.E.2d 390, 395 (1966)). The trial judge noted that Dr. Keaton was an optometrist and not a psychiatrist. Presumably, his reasoning was that the doctor's expert opinion concerning the child's tendency to fabricate her testimony was not within his ex-

pertise. Although the doctor testified that he had been an optometrist for thirty-nine years and had experience with hysterical amblyopia, there was nothing in his list of qualifications to show that he had any particular psychiatric training. Nothing in the proffer showed that a doctor able to diagnose hysterical amblyopia would necessarily be able to render a competent opinion about other hysterical symptoms. Thus, the trial judge did not abuse his discretion in refusing to allow Dr. Keaton's testimony. *Landis*, 218 Va. at 800, 241 S.E.2d at 751.

The trial judge also refused to admit the evidence because of its remoteness. Collateral evidence or that which is incapable of affording a reasonable presumption or inference on matters in issue because it is irrelevant or too remote cannot be admitted into evidence. *Bunting v. Commonwealth*, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967) (citing *Boggs v. Commonwealth*, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957)).

The proffered evidence only showed that the child had hysterical amblyopia in March, 1982, and that this condition cleared up in several weeks. Clinebell would have had the jury infer that the presence of that condition in March, 1982, showed that she might be lying in August, 1984, when she first made these complaints. The proffered testimony was not sufficient to permit such an inference. Dr. Keaton had not treated or examined Clinebell's daughter between March, 1982, and the trial in 1985. The testimony was remote in time and the jury had no way to relate conditions in 1982 to those in 1984, even assuming a correlation between hysterical amblyopia and truthfulness relating to sexual matters. In fact, Clinebell presented no evidence that such a correlation exists. It would have been left for the jury to speculate as to the significance of such testimony. Clinebell bore the burden of showing the relevance of the doctor's testimony, which he failed to do. Therefore, the trial judge was within his discretion in refusing to allow the testimony into evidence.

Clinebell also attempted to offer into evidence the testimony of two of his daughter's playmates who would have testified that she had falsely accused other individuals of sexual misconduct with her. Clinebell argued that such testimony related to the child's credibility.

■ A witness may not be impeached by showing specific acts of misconduct or the fact that the witness may have made a false statement in the past. *Wynne v. Commonwealth*, 216 Va. 355, 356-57, 218 S.E.2d 445, 446 (1975); *Clark v. Commonwealth*, 202 Va. 787, 790, 120 S.E.2d 270, 272 (1961). The proper way to have impeached the child with regard to her veracity would have been to show that she had a bad reputation for truth and veracity. *Bradley v. Commonwealth*, 196 Va. 1126, 1133, 86 S.E.2d 828, 833 (1955) (citing *Brotherhood of R.R. Trainmen v. Vickers*, 121 Va. 311, 93 S.E. 577 (1917)). Thus, the trial court did not err in refusing to admit this testimony into evidence.

Therefore, the convictions are affirmed.

*Affirmed.*

Koontz, C.J., and Coleman, J., concurred.