UPON REHEARING EN BANC
D. ARTHUR KELSEY, Judge.
Kenneth Samuel Moses challenges his conviction on two counts of making an obscene display or exposure in violation of Code § 18.2-387. Finding no error in the trial court’s application of the statute to this case, we affirm.
I.
On appeal, we review the evidence in the “light most favorable” to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle requires us to “ ‘discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.’ ” Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis in original and citation omitted).
On August 8, 2001, Moses walked up to a 10-year-old girl at a Kmart. While he masturbated in front of the child, he told her she was “very beautiful.” The child saw his hand “through his pants” exercising his penis. Pale with fright, the child later told her mother what happened.
On December 4, 2001, Moses stalked an 11-year-old girl at a Wal-Mart. He made eye-contact with the child and passed her in the aisle several times. As he did so, Moses masturbated with a hand down his pants while looking directly at her. During a brief moment while the child’s mother spoke with a friend, Moses approached the girl. He told her she was a “pretty girl” and asked her how her “butt felt.” The child ran to her mother confused and upset.
*360 After his arrest, Moses admitted both incidents. According to him, he used a similar modus operandi about 40 to 50 times with young girls. It “kinda became a habit.” Moses said he would frequent Wal-Mart and Kmart because “[t]hat’s where the crowd is and where you can wander around and look at people.” “It became a method of letting off steam,” he explained, “because I had no other sexual outlet.” His underlying motive, Moses said, was the “need to fulfill my sex drive.”
After reviewing a sex offender evaluation of Moses, the trial judge found him to be a sexual “predator” and concluded “the least I can do in this case is to try to prevent you from committing these crimes again by incarcerating you.” Convicted of two counts of obscene display or exposure under Code § 18.2-387, Moses appeals both convictions.
H.
At trial, Moses argued that his conduct did not violate Code § 18.2-387 as a matter of law.[1] Such behavior can only offend the statute, he reasoned, if it takes place at least partly in the nude. A divided panel of our Court agreed with this reasoning and vacated Moses’s convictions under Code § 18.2-387. Moses v. Commonwealth, 43 Va.App. 565, 600 S.E.2d 162 (2004). Having reconsidered this case en banc, we now affirm. We come to this conclusion based upon the common law history of this offense and the literal text of the statute codifying it.
A. The Common Law Antecedents of Code § 18.2-387
The common law recognized any “open and notorious lewdness” as an indictable offense. 4 William Blackstone, Commentaries on the Law of England *64 (1769). The offense included any “grossly scandalous and public indecency.” *361 Id. Virginia adopted this common law restatement. See William W. Hening, The Virginia Justice 431 (4th ed. 1825) (stating that “in general, all open lewdness, grossly scandalous, is punishable upon indictment at common law”); James M. Matthews, Virginia Criminal Laws 123 (2d ed. 1878) (recognizing crime of “open and gross lewdness and lasciviousness”).[2]
At common law, nudity or near nudity was never the all-important referent. The lewd nature of the conduct itself, if open and notorious, was the main characteristic of the offense. When state legislatures began codifying various subsets of this common law crime, they did not abandon its “open and notorious” characteristic. The history of these codification efforts
leads to one of two possible conclusions about the framers’ intentions with respect to the regulation of sexual intercourse and masturbation. On the one hand, it could be inferred that, because the framers so relentlessly prohibited even as little as public nudity, it necessarily follows that public intercourse and masturbation would have been regarded as even more odious and even more obviously subject to state regulation. On the other hand, it could be inferred that, although the framers understood that public nudity could be regulated, they apparently understood that public nudity while engaged in intercourse or masturbation could not (or that both were permissible as long as the offenders kept their clothes on). Frankly, given the evidence that we have described about antebellum public mor *362 als, statutes, and case law, we find the latter possibility to be remote, to say the least.
State v. Ciancanelli, 181 Or.App. 1, 45 P.3d 451, 459 (en banc), petition for review allowed, 335 Or. 90, 58 P.3d 821 (2002).
It follows that masturbation in a public place, in a manner obvious to all, falls squarely within reach of the common law. See generally Miller v. California, 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973) (noting that patently offensive “representations or descriptions of masturbation” are “obscene”); State v. Maunsell, 170 Vt. 543, 743 A.2d 580, 582-83 (1999) (upholding conviction for “open and gross lewdness” where defendant “massag[ed] his genitals through his pants” in a public place); see also United States v. Statler, 121 F.Supp.2d 925, 927 (E.D.Va.2000) (observing that “there is little doubt that masturbation in a public bathroom, if proven, fits well within the federal regulation proscribing ‘a display or act that is obscene’ ”).
B. Obscene “Display Or Exposure” Under Code § 18.2-387
Consistent with the common law, Virginia codified a particular type of lewdness offense in Code § 18.2-387. Leaving little doubt as to its intentions, the General Assembly criminalized the “obscene display or exposure” of one’s person or private parts in a public place. Code § 18.2-387 (emphasis added).
Moses argues the word “exposure” means nudity and “display” means nothing more, making the disjunctive no more than a redundant conjunctive. We find this reasoning inconsistent with first principles of statutory construction. As has been often said: ‘Words in a statute should be interpreted, if possible, to avoid rendering words superfluous.” Cook v. Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004); Zhou v. Zhou, 38 Va.App. 126, 136, 562 S.E.2d 336, 340 (2002) (observing that “basic canons of statutory construction” exclude interpretations rendering statutory language “superfluous”). “It is the duty of the courts to give effect, if possible, to every word of the written law.” Hodges v. Commonwealth, *363 45 Va.App. 118, 126, 609 S.E.2d 61, 65 (2005) (en banc) (citation omitted).
Unless the word “display” is superfluous, it must mean something different from “exposure.” If “exposure” can only mean some degree of nudity, then “display” necessarily means something different. And so it does. Among the definitions of “display” in ordinary speech (particularly where, as here, it is used as a noun rather than a verb) is the “demonstration or manifestation of something.” American Heritage Dictionary 407 (2d coll. ed. 1985).[3] It is just that definition we give to the word “display” when used in other provisions of the Code.
For example, Code § 18.2-53.1 criminalizes the “display” of a firearm while committing a felony. A robber can effectively “display” a firearm in his pocket even though completely hidden from view. Cromite v. Commonwealth, 3 Va.App. 64, 66-67, 348 S.E.2d 38, 39-40 (1986). The word “display” means “not only the notion of spreading before view or exhibiting to the sight, but also that which is manifested to any of a victim’s senses____” Id. (quoting State v. Smallwood, 346 A.2d 164, 167 (Del.1975)). “Thus a weapon may be manifested to a victim even though he may not see it” because the ability to otherwise discern the weapon’s presence is itself a manifestation “just as effective, for the statutory purpose, as putting a gun in plain view.” Id.; see also Deshields v. State, 706 A.2d 502, 507 (Del.1998) (finding that robber “displays” a weapon by putting his hand in his pocket and then handling the weapon); People v. Butts, 181 A.D.2d 432, 580 N.Y.S.2d 758, 758 (1992) (holding that robber displays a weapon by putting his hand inside his jacket and asking victim if it would “make a difference” if he had a gun).
*364 Moses argues that this understanding of display has been foreclosed by prior Virginia cases. The cases he relies upon, however, do not once mention or discuss the word display as used in Code § 18.2-387. See, e.g., Wicks v. Charlottesville, 215 Va. 274, 274-75, 208 S.E.2d 752, 753-54 (1974) (interpreting local ordinance stating that no “person shall expose himself’); Noblett v. Commonwealth, 194 Va. 241, 72 S.E.2d 241 (1952) (affirming a conviction on an indictment alleging that the defendant exposed himself); Siquina v. Commonwealth, 28 Va.App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998) (interpreting the indecent liberties statute, which forbids exposing one’s sexual or genital parts to a child). They instead focus entirely on the meaning of “expose.”[4]
Properly understood, every visible exposure of one’s genitals necessarily involves a display of one’s genitals. But that does not prove the reverse: that every display necessarily includes an exposure. Hence, a robber can still display a handgun in his pocket while not exposing it to sight. So too a man masturbating in public can still display his “person” or “private parts” while not exposing his penis to sight. We thus reject Moses’s claim that the display-or-exposure formulation in Code § 18.2-387 codifies a mere semantic redundancy, a pairing of interchangeable synonyms.
III.
The trial court found Moses’s public masturbation to be an obscene “display” of his “person, or the private parts thereof’ in violation of Code § 18.2-387. This conclusion cannot be set aside simply because Moses made this display while fully clothed.

Affirmed.

. As he concedes on appeal, Moses never challenged the obscene nature of his conduct. Rule 5A:18 precludes him from asserting this challenge for the first time on appeal. No basis exists in this case for invoking the "good cause” or "ends of justice” exceptions to Rule 5A:18.

. The "best construction” of a statute codifying common law principles is the one "most near to the reason of the common law, and by the course which that observes in cases of its own.” Chichester v. Vass, 5 Va. (1 Call) 83, 102 (1797), quoted in part in Wicks v. Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974). "The reason is that the Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.” Wicks, 215 Va. at 276, 208 S.E.2d at 755.

. This point demonstrates the irrelevance of cases like State v. Jaime, 4 Conn.Cir.Ct. 530, 236 A.2d 474, 475 (1967), and State v. Wymore, 98 Idaho 197, 560 P.2d 868, 869-70 (1977). The indecency laws in those cases only make it unlawful to “expose” the person or private parts— but do not go further and criminalize the “display" of the person or private parts, as does Code § 18.2-387.

. Under Virginia law, stare decisi s does not "foreclose inquiry” into an issue not previously "raised, discussed, or decided.” Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 560, 554 S.E.2d 55, 59 (2001); see also Finnerty v. Thornton Hall, Inc., 42 Va.App. 628, 639-40, 593 S.E.2d 568, 574 (2004).