PRESENT:  All the Justices

SAMIR ALLEN FARHOUMAND

                                        OPINION BY
v.  Record No. 140012          JUSTICE DONALD W. LEMONS
                                     October 31, 2014
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the term "expose," as

used in Code § 18.2-370, includes tactile contact or is

limited to situations where "sexual or genital parts" are

"exposed" to sight.  We also consider whether the evidence is

sufficient to prove beyond a reasonable doubt that Samir Allen

Farhoumand ("Farhoumand") exposed his genitalia in violation

of Code § 18.2-370(A)(1).

                     I.  Proceedings Below

     In January 2012, S.F., a minor child, told his family he

had been sexually abused over the course of several years by

his older cousin, Samir Farhoumand.  On May 21, 2012,

Farhoumand was indicted in the Circuit Court of Fairfax County

("trial court") on four counts of "expos[ing] his sexual or

genital parts" to a child under fifteen years of age in

violation of Code § 18.2-370(A)(1).  The indictments covered a

period of two years, divided into four consecutive time

periods, with a single act of exposure charged in each indictment.[1]

A trial commenced on August 27, 2012, before the Honorable Randy I. Bellows, Circuit Judge for Fairfax County, without a jury. At the close of the Commonwealth's evidence, the defense moved to strike all four indictments. The trial court dismissed the first indictment, but found there was sufficient evidence to support the remaining three indictments, and denied the motion to strike as to those counts.

After presenting its evidence, the defense moved to strike the remaining three indictments. The trial court denied the second motion to strike, and found Farhoumand guilty of the remaining three counts of "expos[ing] his . . . sexual or genital parts" to a minor child in violation of Code § 18.2-370(A)(1). The trial court relied, in part, upon the unpublished decision of the Court of Appeals of Virginia in Mason v. Commonwealth, Record No. 0309-97-2, slip op. at 4 (November 10, 1998)(en banc), which held: "[e]xposure means not only to 'lay open to view' but also to 'lay open to feel or to touch.'"

---

[1] Indictment 1 –"on or between" Sept. 3, 2009 and Dec. 31, 2009; Indictment 2 – "on or between" Jan. 1, 2010 and Sept. 3, 2010; Indictment 3 – "on or between" Sept. 4, 2010 and Dec. 31, 2010; Indictment 4 – "on or between" Jan. 1, 2011 and Sept. 3, 2011.

On November 15, 2012, Farhoumand argued two motions to set aside the verdict, claiming that the trial court had applied an improper definition of the term "expose," and that the evidence failed to establish with requisite specificity whether any particular act of exposure occurred within the time frames of the individual indictments. The trial court denied both motions. The trial court sentenced Farhoumand to concurrent terms of 10 years imprisonment with 6 years suspended on each of the three counts, with active probation for ten years from the date of the defendant's release from prison.

Farhoumand appealed his convictions to the Court of Appeals, which affirmed the trial court's judgment. In an unpublished opinion, the Court of Appeals held that there is

> no compelling reason to conclude that the display of nudity must be limited to a visual display. Indeed, if exposure is defined as "make known" or "lay bare," such a definition encompasses a tactile exposure as well as visual.
>
> . . . .
>
> We find the reasoning in Mason persuasive, in that "expose" means not only to lay bare to view, but to feel or touch. . . . We conclude that because appellant "made known" his bare penis to the victim's touch, he physically and tactilely exposed his penis to the victim.

3

Farhoumand v. Commonwealth, Record No. 2087-12-4, 2013 Va. App. LEXIS 353, at *6-7 (Dec. 3, 2013).

Farhoumand appealed the judgment of the Court of Appeals to this Court, and we awarded an appeal on the following assignments of error:

1. The Court of Appeals erred in holding that "exposure" is proven where genitalia is felt but not seen and in failing to dismiss the indictments where the evidence did not prove that his genitalia was "exposed" to sight.

2. The Court of Appeals erred in holding that the evidence was sufficient to sustain the defendant's convictions whether "exposure" is proven where genitalia is seen or felt.

## II.  Meaning of "Expose" in Code § 18.2-370

Whether the term "expose," as used in Code § 18.2-370, is limited to visual exposure, or includes tactile exposure, is a question of statutory interpretation reviewed de novo. David v. David, 287 Va. 231, 237, 754 S.E.2d 285, 289 (2014).

Code § 18.2-370(A)(1) provides, in relevant part, that:

> Any person 18 years of age or over, who, with lascivious intent, knowingly and intentionally . . . [e]xpose[s] his or her sexual or genital parts to any child [under the age of 15 years] to whom such person is not legally married or propose[s] that any such child expose his or her sexual or genital parts to such person [is guilty of a Class 5 felony.]

A. Plain Meaning

4

We construe statutes to "ascertain and give effect to the intention" of the General Assembly. Rutter v. Oakwood Living Ctrs. of Va., Inc., 282 Va. 4, 9, 710 S.E.2d 460, 462 (2011) (internal quotation marks omitted). Because the General Assembly's intent "is usually self-evident from the statutory language," we apply the plain meaning of the words used in the statute. Id. (citation and internal quotation marks omitted); see also Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925-26 (2006).

Webster's Third New International Dictionary 802 (1993) defines expose as "to lay open to view" or "lay bare." It also offers the definitions to "make known" or "set forth," with the qualifying example: "[E]ach had started exposing his views." The Webster's New College Dictionary 252 (3d ed. 2008), defines "expose" as "to lay bare or uncover." Merriam-Webster's Collegiate Dictionary 441 (11th ed. 2003), defines "expose" as "caus[ing] to be visible or open to view." In The American Heritage Dictionary of the English Language 625 (5th ed. 2011), "expose" is defined simply as "to make visible." Each of these definitions supports our conclusion that, in the context of Code § 18.2-370, "expose" unambiguously means revealing one's genitalia to sight.

B. Legislative History

The legislative history of Code § 18.2-370 further supports our conclusion that the General Assembly intended exposure to be limited to instances of visual display. Subsection 2 of Code § 18.2-370(A) previously criminalized fondling. It read:

> Any person eighteen years of age or over, who, with lascivious intent, shall knowingly and intentionally . . . . [i]n any manner fondle or feel, or attempt to fondle or feel, the sexual or genital part of any child, or the breast of any such female child . . . . shall be guilty of a Class 6 felony.

Former Code § 18.2-370(A)(Cum. Supp. 1980). However, in 1981, the General Assembly repealed Subsection 2 and re-codified its provisions in two closely related statutes: Code §§ 18.2-67.3 and 18.2-67.4. 1981 Acts ch. 397.

Subsection (A)(4)(a) of Code § 18.2-67.3, Virginia's aggravated sexual battery statute, prohibits "sexually abus[ing] the complaining witness [if] . . . [t]he act is accomplished against the will of the complaining witness by force, threat or intimidation, and [t]he complaining witness is at least 13 but less than 15 years of age." Code § 18.2-67.4(A) provides: "An accused is guilty of sexual battery if he sexually abuses, as defined in § 18.2-67.10, (i) the complaining witness against the will of the complaining witness, by force, threat, intimidation, or ruse . . . ." In

6

turn, Code § 18.2-67.10 defines "sexual abuse," in pertinent

part, as:

> an act committed with the intent to
> sexually molest, arouse, or gratify any
> person, where:
>     a. The accused intentionally touches
> the complaining witness's intimate parts
> or material directly covering such
> intimate parts; [or]
>     b. The accused forces the complaining
> witness to touch the accused's, the
> witness's own, or another person's
> intimate parts or material directly
> covering such intimate parts.

(Emphasis added.) Additionally, in 2007, the General Assembly

enacted Code § 18.2-67.4:2, which provides that an accused is

guilty of sexual abuse of a child under 15 if he "with

lascivious intent, commits an act of sexual abuse, as defined

in § 18.2-67.10, with any child 13 years of age or older but

under 15 years of age." 2007 Acts ch. 463.

Because the General Assembly specifically removed

Subsection 2 from Code § 18.2-370(A) and re-codified it as

Code §§ 18.2-67.3, 18.2-67.4 and 18.2-67.10, and as recently

as 2007 enacted Code § 18.2-67.4:2, we conclude that the

General Assembly did not intend for Code § 18.2-370(A) to

continue to criminalize fondling, or situations where the

accused forces the complaining witness to touch the accused's

genitalia. The interpretation given by the Court of Appeals

renders at least one of these statutes superfluous and ignores

the General Assembly's specific act of segregating the crime of fondling/molestation from the crime of taking indecent liberties with minors. Therefore, the Court of Appeals erred by holding that Code § 18.2-370(A) proscribes the same conduct as Code §§ 18.2-67.3, 18.2-67.4, 18.2-67.4:2 and 18.2-67.10.

C. Precedent

In Noblett v. Commonwealth, 194 Va. 241, 247, 72 S.E.2d 241, 244 (1952), we held that, under the common law, indecent exposure required proof that the defendant's private parts were "likely to have been seen by persons using the street." Similarly, in Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974), we construed a Charlottesville City Code provision making it illegal to indecently "expose" oneself as proscribing "an intentional and indecent exposure in a public place where it is likely to be seen, whether actually seen by one or several persons." However, we have never specifically addressed whether the meaning of the word "expose," within the context of Code § 18.2-370(A)(1), requires the possibility of a visual sighting.

The Court of Appeals has discussed the meaning of "expose" in several recent published cases. In Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998), the Court of Appeals held that "[Code § 18.2-370] proscribes the intentional display by an adult, with

8

lascivious intent, of his or her genitals in the presence of a child where a reasonable probability exists that they might be seen by that child, regardless of the child's actual perception of such a display."  In affirming the defendant's conviction in that case, the Court of Appeals concluded that the victim had a reasonable probability of seeing the defendant's genitalia when the two were in a bathroom together and the defendant's "pants and underwear were pulled down to his feet."  Id.

In Moses v. Commonwealth, 45 Va. App. 357, 611 S.E.2d 607 (2005), the Court of Appeals, sitting en banc, addressed the difference between "display" and "expose" as used in Code § 18.2-387.[2]  It held that:

> Unless the word "display" is
> superfluous, it must mean something
> different from "exposure."  If "exposure"
> can only mean some degree of nudity, then
> "display" necessarily means something
> different.  And so it does.  Among the
> definitions of "display" in ordinary
> speech (particularly where, as here, it is
> used as a noun rather than a verb) is the
> "demonstration or manifestation of
> something."  It is just that definition we

---

[2] Code § 18.2-387, Virginia's indecent exposure statute, provides: "Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor.  No person shall be deemed to be in violation of this section for breastfeeding a child in any public place or any place where others are present."

give to the word "display" when used in
other provisions of the Code.

. . . .

Properly understood, every visible
exposure of one's genitals necessarily
involves a display of one's genitals.  But
that does not prove the reverse: that
every display necessarily includes an
exposure.  Hence, a robber can still
display a handgun in his pocket while not
exposing it to sight.  So too a man
masturbating in public can still display
his "person" or "private parts" while not
exposing his penis to sight.  We thus
reject Moses's claim that the display-or-
exposure formulation in Code § 18.2-387
codifies a mere semantic redundancy, a
pairing of interchangeable synonyms.

Moses, 45 Va. App. at 363-64, 611 S.E.2d at 610 (citation

omitted).  In affirming Moses' conviction under Code § 18.2-

387, the Court of Appeals determined that he had "displayed"

his genitalia by "exercising his penis" underneath "his

pants."  Id. at 359, 611 S.E.2d at 608.

The Court of Appeals diverged from its reasoning in

Siquina and Moses in several unpublished decisions – including

its opinion in this case.  In Mason, Record No. 0309-97-2,

slip op. at 4 (Nov. 10, 1998), the Court of Appeals held that:

"[e]xposure means not only to 'lay open to view' but also to

'lay open to feel or to touch.'"  The Court of Appeals cited

no authority for this proposition, noting only that the

"[c]ommon usage of the word 'expose'" encompasses more than

10

visual exposure, such as when "a person is exposed to a toxin even though the person may have no visual perception of the substance."  Id.

In this case, the Court of Appeals found:

> the reasoning in Mason persuasive, in that "expose" means not only to lay bare to view, but to feel or touch.  This conclusion is consistent with the dictionary definition of "expose." Further, to limit exposure to visual observation unduly limits the behavior that the statute intends to prevent. Children should not be subjected in any sensory capacity to the sexual or genital parts of an adult who harbors lascivious intent.

Farhoumand, 2013 Va. App. LEXIS 353, at *7.  These conclusions conflict with the published decisions of the Court of Appeals in Siquina, 28 Va. App. at 697-99, 508 S.E.2d at 352-53, and Moses, 45 Va. App. at 363-64, 611 S.E.2d at 610, which state, respectively, that proof of "exposure" requires "a reasonable probability . . . that [the defendant's genitals] might be seen by that child" and that "'exposure' can only mean some degree of nudity."

The panel of the Court of Appeals erred in this case by applying Mason, an unpublished decision, in place of its earlier published opinions.  We hold that the word "expose," as it is used in Code § 18.2-370, requires a visual display where the genitalia are seen, or where there is a possibility

11

that they could be seen.  Accordingly, exposure does not include situations where the genitalia are felt but are otherwise covered or obscured from view.

### III.  Sufficiency of the Evidence

Having found that the Court of Appeals erred in applying a tactile definition of exposure to the facts of this case, we must now review the all of the relevant evidence supporting Farhoumand's conviction under each indictment.  Then, applying the correct definition, we must determine whether the evidence offered under each indictment was sufficient to prove that Farhoumand "expose[d]" his "genital or sexual parts" in violation of Code § 18.2-370(A)(1).

A. Relevant Facts

At trial, S.F. testified that all of the abuse occurred while Farhoumand was staying with S.F.'s family during Farhoumand's school breaks.  The abuse allegedly began shortly before Farhoumand graduated from the University of Virginia and continued while he was attending dental school at the University of California, Los Angeles.  While S.F. testified that the first incident of sexual abuse occurred during the winter of 2009, during his seventh grade year, the time periods covered by the indictments only encompassed S.F.'s eighth and ninth grade years.

12

S.F. testified that the first incident of abuse occurred in the middle of the night.  S.F. stated that he "woke up" and saw Farhoumand "fondling [him]."  He testified that the second incident of abuse occurred days later and involved the "same thing."

**Indictment No. 2: Jan. 1, 2010 - Sept. 3, 2010[3]**

Indictment No. 2 covered the spring of S.F.'s eighth grade year and the following summer.  S.F. testified that in "the beginning, and throughout eighth grade" there were incidents where "[Farhoumand] would take [S.F.'s] hand, put it on [Farhoumand's] penis" and "masturbate himself" with it.  When Farhoumand placed S.F.'s hand on Farhoumand's penis, S.F. would "sometimes . . . [be] turn[ed] to his side . . . [a]way from [Farhoumand]."  During these acts, S.F. stated that Farhoumand's underwear "was not fully down, sometimes it wasn't at all.  Very rarely was it fully down."  However, S.F. testified that "occasionally [Farhoumand's penis] was exposed, but most of the time it was inside [his underwear]."  S.F. described these acts with clarity, but could not remember precisely when they occurred:

---

[3] Indictment 1, which covered September 3, 2009 through December 31, 2009, the fall and early winter of S.F.'s eighth grade year, was dismissed at trial.  The evidence under this indictment was almost entirely duplicative of the evidence offered under Indictment No. 2; therefore, we will move directly to reciting the facts offered at trial that support Indictment No. 2.

Q When you say, "over time," do you know how long afterwards that occurred?

A Unh-huh.

Q Do you remember what grade you were in when that occurred?

A No.

Q Did you ever see your cousin's penis?

A Yes, I did.

Q And how often did that happen?

A I'm not certain – rarely.

When asked again to specify when the defendant first began placing S.F.'s hand on the defendant's penis, S.F. testified:

THE WITNESS: It – I can be for sure that it happened, like, before ninth grade began, was the first incident.  So all throughout ninth grade, but the first incident basically must have been, I can pretty much assure the Court, that it was before ninth grade.

THE COURT: You're saying the first incident occurred before ninth grade?

THE WITNESS: Yes.

THE COURT: And then after that – you mean, where he took your hand and put it on his penis?

THE WITNESS: Yes.

During the defense's case-in-chief, Farhoumand testified on his own behalf and was cross-examined by the Commonwealth. He explained that he that graduated from the University of Virginia in December of 2009 and lived "the majority of the

14

time" at S.F.'s house from January 1, 2010 to March 30, 2010. Farhoumand took several trips that spring and summer but the evidence shows that he was back in Virginia: May 2, 2010 to May 21, 2010; May 24, 2010 to June 2, 2010; June 8, 2010 to July 26, 2010; August 2, 2010 to August 22, 2010; and August 25, 2010 to September 4, 2010.

During these periods, Farhoumand admitted to being a frequent house guest at S.F.'s home, sometimes sleeping in the same bed with S.F., and that between March 2010 and August 2010 Farhoumand "may have touched [S.F.] [o]n eight occasions."  On cross examination, he acknowledged admitting to "fondling" S.F., "four to eight times." [4]  However, Farhoumand denied ever forcing S.F. to touch his penis, and he also disavowed ever visually exposing his genitalia to S.F.

**Indictment No. 3: Sept. 4, 2010 – Dec. 31, 2010**

Indictment No. 3 covers the fall and early winter of S.F.'s ninth grade year.  As described above, S.F. testified that the incidents when S.F. was made to touch Farhoumand's penis continued to occur "[d]uring the course of ninth grade." However, S.F. said that the abuse that happened "during ninth grade" was "probably the most traumatic."  S.F. stated:

---

[4] Two Los Angeles police officers, Kenneth Gutierrez and Tony Im, testified during the Commonwealth's case-in-chief that Farhoumand had confessed to them that he had touched his cousin's penis "four times."

15

"[Farhoumand] would essentially turn me over to face him, and essentially place his penis touching mine, and masturbate it or put my hand on it and masturbate it." S.F. provided the following details about these incidents:

Q      And how were your cousin's clothes?

A      They were pulled down, or again through the fly. I didn't really look, so I wasn't sure.

Q      And did you ever see his penis during those –

A      Once, because I didn't – I wasn't sure what was happening, but once I figured it out, I wouldn't look.

Q      And were you able to feel his penis?

A      Yeah.  That was strange.

S.F. also testified that he could see Farhoumand's face during the abuse that involved penis-to-penis contact.

During the time frame covered by Indictment No. 3, Farhoumand's testimony supports that he was in Virginia September 4 to September 11 and December 11 to December 31, 2010.  While Farhoumand testified that S.F. went out of the country from December 22 through the remainder of the indictment period, at least 17 days remain where he was in Virginia and had access to the victim.

**Indictment No. 4: Jan. 1, 2011 - Sept. 3, 2011**

Indictment No. 4 covers the late winter and early spring of S.F.'s ninth grade year and the following summer. Farhoumand testified that he was only in Virginia from June 12

16

to June 24 and September 1 through September 3, 2011 during this time period.

As mentioned under Indictment No. 3, S.F. testified that he saw Farhoumand's penis "once" during the ninth grade. He also testified, as described above, that he was made to touch Farhoumand's penis "during the course of ninth grade" and that Farhoumand had placed his uncovered penis against S.F.'s penis "in ninth grade."

S.F. claimed that the last incident of abuse occurred on September 2, 2013, "right before tenth grade began, a day before [S.F.'s fifteenth] birthday." S.F. testified that on this occasion he also had a friend sleeping over in his room. S.F. slept on the floor and S.F.'s friend slept on the bed. S.F. stated that Farhoumand came next to him on the floor and "proceeded to fondle" him. S.F. explained that this incident was "actually less severe than other times."

On cross-examination, when asked whether Farhoumand had placed S.F.'s hand on Farhoumand's penis during that encounter, S.F. replied, "to be quite honest, it's difficult to remember but if I had to say . . . today for the court officially, I would say yes." There was no evidence offered as to whether Farhoumand's penis was ever uncovered during this incident.

B. Analysis

17

We review the sufficiency of the evidence in the light most favorable to the Commonwealth, and only reverse the judgment of the circuit court when its decision is plainly wrong or without evidence to support it. Maldonado-Mejia v. Commonwealth, 287 Va. 49, 54, 752 S.E.2d 833, 835 (2014).

Farhoumand argues that each of his convictions must be reversed because "[t]he Commonwealth . . . failed to prove beyond a reasonable doubt that the defendant's penis was exposed to sight during any one of the time periods covered by the three indictments." The Commonwealth responds that an indictment is not invalid if omits or misstates the time at which an offense occurs when time is not an element of an offense. The Commonwealth further argues that there was sufficient evidence to support the convictions under each indictment.

Code § 19.2-226 provides that "no indictment or other accusation shall be quashed or deemed invalid . . . [f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense." In Harris v. Commonwealth, 185 Va. 26, 37 S.E.2d 868 (1946), we reaffirmed the longstanding principle that, "[i]n a felony case the Commonwealth may prove the commission of a crime charged on a date different from that alleged in

18

the indictment."  Id. at 33, 37 S.E.2d at 871 (citing Puckett

v. Commonwealth, 134 Va. 574, 585, 113 S.E. 853, 856 (1922)).

Several federal circuits agree, holding that "[t]ime is

not a material element of a criminal offense unless made so by

the statute creating the offense." United States v. Stuckey,

220 F.3d 976, 982 (8th Cir. 2000)(citing Ledbetter v. United

States, 170 U.S. 606, 612 (1898)(stating that it is not

"necessary to prove that the offence was committed on the day

alleged, unless a particular day be made material by the

statute creating the offence").  See also Real v. Shannon, 600

F.3d 302, 308 (3rd Cir. 2010); United States v. Creamer, 721

F.2d 342, 343 (11th Cir. 1983)("reject[ing] the contention

that time becomes a material element of a criminal offense

merely because the defense of alibi is advanced."); United

States v. King, 703 F.2d 119, 123-24 (5th Cir. 1983).

While an indictment is not invalid if it omits or

misstates the time at which an offense occurs when time is not

an element of the offense, each indictment must meet due

process requirements:

> These criteria are, first, whether the indictment
> "contains the elements of the offense intended to be
> charged, 'and sufficiently apprises the defendant of what
> he must be prepared to meet,'" and, secondly, "'in case
> any other proceedings are taken against him for a similar
> offence, whether the record shows with accuracy to what
> extent he may plead a former acquittal or conviction.

Russell v. United States, 369 U.S. 749, 763-64

(1962)(collecting cases).

In Clinebell v. Commonwealth, 235 Va. 319, 321, 368

S.E.2d 263, 264 (1988), the defendant was convicted of five

counts of sexual assault against his daughter. On appeal, he

argued that the indictments were fatally defective because

they failed to specify the precise dates of the offenses for

which he was convicted.  Id.  We concluded that the

indictments were legally sufficient and adopted the holding

and rationale of the Court of Appeals.[5]  Id.  In that

referenced opinion, the Court of Appeals observed:

> In most criminal cases, there is no doubt that a crime
> occurred; the only issue is who committed the crime.  An
> alibi-based defense is offered in such cases to prove
> that it was impossible for the defendant to have
> committed the offense because he was not at the scene of
> the crime during its commission.
>     The question in most parent-child sexual abuse
> cases, however, is not who committed the crime, but
> whether a crime was ever committed.

Clinebell v. Commonwealth, 3 Va. App. 362, 367, 349 S.E.2d

676, 679 (1986).

The evidence shows that Farhoumand was a frequent house

guest in S.F.'s family home during the time periods alleged in

---

[5] In Clinebell, we did not review the rationale
supporting our holding, but rather directly adopted the
rationale of the Court of Appeals in that case: "We conclude
that the indictments are legally sufficient, and on this
issue, we affirm the holding and rationale of the Court of
Appeals.  See Clinebell, 3 Va. App. at 364-67, 349 S.E.2d at
677-79."  235 Va. at 321, 368 S.E.2d at 264.

the indictments. By his own admission, Farhoumand was alone with, and fondled, S.F. on at least four to eight separate occasions. The question here, like the question presented in Clinebell, is not who committed the crime, but whether the crime charged in each of the indictments was committed.

**Indictment No. 2: Jan. 1, 2010 - Sept. 3, 2010**

S.F. testified that the first time Farhoumand placed S.F.'s hand on Farhoumand's penis and "masturbated himself" with it was "before ninth grade began." S.F. stated that when Farhoumand placed S.F.'s hand on Farhoumand's penis, that the defendant's underwear "was not fully down, sometimes it wasn't at all. Very rarely was it fully down." However, S.F. testified that Farhoumand's penis was "occasionally" exposed. Farhoumand acknowledged that during the time frame covered by Indictment No. 2, he lived "the majority of the time" at S.F.'s house, except for a few trips that he took during the summer of 2010. He also admitted that he had at least eight opportunities to molest S.F., and that he fondled S.F. four to eight times between March and August of 2010. Viewing this evidence in the light most favorable to the Commonwealth, we cannot conclude that the trial court's judgment convicting Farhoumand on this count is plainly wrong or without evidence to support it; therefore we will affirm the conviction as to Indictment No. 2.

**Indictment No. 3: Sept. 4, 2010 – Dec. 31, 2010**

S.F.'s testimony that he saw Farhoumand's penis "once" during ninth grade and that Farhoumand touched his uncovered penis to S.F.'s penis "during ninth grade," combined with Farhoumand's access to S.F. for at least 17 days during the indictment period and evidence of contact with S.F. during that time, support the trial court's judgment convicting the defendant. Therefore, under Indictment No. 3, we find that the evidence was sufficient to prove that Farhoumand visually exposed his penis in violation of Code § 18.2-370(A)(1).

**Indictment No. 4: Jan. 1, 2011 - Sept. 3, 2011[6]**

S.F. testified that he saw Farhoumand's penis "once" during the ninth grade. He also testified, as described above, that he was made to touch Farhoumand's penis "during the course of ninth grade" and that Farhoumand had placed his uncovered penis against S.F.'s penis "in ninth grade." However, this is the same evidence used to support the

---

[6] September 3, 2011, S.F's fifteenth birthday, was included within the time frame alleged in Indictment No. 4. There was conflicting evidence at trial as to whether the final act of abuse occurred on September 2, 2011, which would have made any conduct constituting an act of exposure a felony, or September 3, which would have made the same conduct a misdemeanor. However, we need not address this issue, because we find that the evidence offered with respect to the final incident of abuse was insufficient to support the allegation that the defendant visually exposed his "sexual or genital parts."

22

conviction under Indictment No. 3 and cannot be used to support a second conviction under Indictment No. 4.

The only other specific evidence of abuse offered under Indictment No. 4 was the final incident on September 2, 2013. No evidence was offered as to whether Farhoumand's penis was ever uncovered during this incident. Therefore, we conclude that the evidence in the record was insufficient to sustain a conviction under Indictment No. 4.

## IV. Conclusion

Accordingly, we will reverse and vacate Farhoumand's conviction under Indictment No. 4 (FE-2012-707) because the evidence was insufficient to prove that a distinguishable act of visual exposure occurred during the time period stated in the indictment.[7] To the extent that the trial court relied on a tactile definition of exposure in convicting Farhoumand under Indictment No. 2 and Indictment No. 3, we hold that such reliance was error. Nevertheless, after reviewing the evidence, we will affirm Farhoumand's convictions under Indictment No. 2 (FE-2012-705) and Indictment No. 3 (FE-2012-706) because there was sufficient evidence to prove that the defendant visually "expose[d]" his penis to S.F., a minor

---

[7] Because Farhoumand received a sentence of 10 years with 6 years suspended on each charge, and those sentences were ordered to be served concurrently, we do not need to remand the case for resentencing.

23

child, in violation of Code § 18.2-370(A)(1), during the time frames alleged.

We reject the conclusion set forth by the Court of Appeals that "expose" under Code § 18.2-370(A)(1) includes tactile exposure.  The plain meaning of the statute, the legislative history, our decisions interpreting "exposure," and the published decisions of the Court of Appeals all support our conclusion that exposure is limited to a visual display where the child saw, or could have seen, the uncovered genitalia.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and final judgment.</u>

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

The General Assembly placed no limitation on the nature of the knowing and intentional "expos[ure]" of one's sexual or genital parts to a child, with lascivious intent, in criminalizing such act under Code § 18.2-370.  Thus, the legal question before this Court as posed by the majority opinion - "[w]hether the term 'expose,' as used in Code § 18.2-370, is limited to visual exposure, or includes tactile exposure" - is answered in the asking.  Because tactile exposure is indeed a form of exposure, it is proscribed under the statute.

24

"Expose" is defined as to "lay open to view[,] lay bare[,] make known[,] exhibit." Webster's Third New International Dictionary 802 (1993). Based on this definition, I find no compelling reason to conclude that the proscribed conduct must be limited to a visual exposure. Indeed, because exposure is defined as "make known" or "lay bare," such a definition encompasses a tactile exposure as well as visual.

I concur in the result reached by the majority opinion on Indictment Numbers 2 and 3 because I conclude there was sufficient evidence to convict Farhoumand as to these two indecent liberties charges based on proof of visual, as well as, tactile exposure. But, I would also affirm Farhoumand's conviction on Indictment Number 4 as I conclude, like the Court of Appeals, that there was also sufficient evidence of tactile exposure on this charge.