PRESENT:  All the Justices

ALVIS CHERRY, ET AL.

OPINION BY
v.  Record No. 170718                     JUSTICE STEPHEN R. McCULLOUGH
                                          May 3, 2018
LAWSON REALTY CORPORATION, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge


Alvis Cherry and Ashley Aldridge filed a multi-count complaint alleging Cherry suffered

damages after being exposed to mold in their apartment.[1]  The trial court dismissed the two

counts of their complaint that were based on the common law.  The court reasoned that the

General Assembly intended to abrogate such common law causes of action when it enacted Code

§ 8.01-226.12.  For the reasons noted below, we conclude that the General Assembly did not

intend to disturb existing causes of action under the common law when it enacted this statute.

Accordingly, we reverse the judgment below and remand for further proceedings.

## BACKGROUND

The plaintiffs filed this complaint against, among others, their landlord and a real estate

management company, alleging that the apartment they rented exposed them to excessive

moisture and mold and that they suffered injuries as a result.[2]  The complaint includes five

counts:  counts I and II sought recovery for violation of the Virginia Residential Landlord and

Tenant Act, Code §§ 55-248.2 through -248.40 ("VRLTA"), and for breach of contract; counts

---

[1] The complaint states that "Ashley Aldridge is listed as a plaintiff only for necessary
party purposes; no claims are asserted by Ashley Aldridge."

[2] For the sake of simplicity, we will refer to the defendants as "the landlord."

III and IV allege, respectively, common law negligence and *per se* negligence; and count V alleges actual or constructive fraud.[3]

More specifically with respect to the negligence counts, the complaint alleges that the landlord was negligent in failing to warn of known and concealed defects that rendered the occupation of the premises dangerous, did not perform repairs with reasonable care, and did not maintain in a safe and habitable condition the premises outside of the plaintiff's exclusive possession and control. The *per se* negligence count cited breaches of the Virginia Maintenance Code in addition to common law duties.

Factually, the complaint alleges that the move-in inspection did not reveal any visible mold. Approximately one month later, however, a line from the HVAC unit clogged and caused water to pour out. The water soaked the HVAC closet wall as well as the living room floor and carpet. The complaint states that the landlord unclogged the line but did not address the wet carpet. Additional clogs caused more water to leak into the apartment, and the landlord did not properly dry the carpet. Instead, the landlord used fans and a blower. The plaintiffs allege that the HVAC closet became covered in mold and the carpet began to smell bad.

The plaintiffs further allege that mushrooms began to grow on the carpet, and that the landlord took inappropriate steps in response, such as removing the baseboard along the living room floor. According to the plaintiffs, some drywall crumbled into pieces and "[l]arge areas of black mold growths were visible behind the drywall openings." The plaintiffs allege that the landlord's removal of the wall board, trim, and other building materials allowed mold spores to spread. After several additional ineffectual steps by the landlord to control the mold, the tenants moved out.

---

[3] The plaintiffs later nonsuited the fraud count.

The defendants filed an answer to the complaint, in which they denied the plaintiffs' allegations. The defendants also moved for summary judgment regarding the plaintiffs' common law claims, which the court denied. The defendants further moved to restrict the plaintiffs' opening statements. At a pre-trial conference, the court announced that its review of the law led it to conclude that Code § 8.01-226.12 established "a direct cause of action for personal injury and property damage whenever the landlord or the managing agent with maintenance responsibilities failed to remediate visible mold in accordance with codified Professional Standards for Mold Remediation." In addition, the court held that "with the enactment of . . . Code § 8.01-226.12 [the General Assembly] intended to abrogate the application of all common law claims for personal injury involving landlord/tenant relationships." Based on these rulings, the trial court dismissed with prejudice counts III and IV of the complaint. The court then certified its decision for an interlocutory appeal under Code § 8.01-670.1.

## ANALYSIS

I.     PRESERVATION OF THE ARGUMENTS FOR APPEAL.

Under Rule 5:25, this Court may not consider a trial court's ruling as a basis for reversal "unless an objection was stated with reasonable certainty at the time of the ruling." Code § 8.01-384(A) provides in relevant part that "[a]rguments made at trial via . . . recital of objections in a final order . . . shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal." Following entry of the trial court's memorandum opinion, the plaintiffs submitted a number of objections that they appended to the trial court's order dismissing the negligence counts. The court had the opportunity to consider these objections.

Relying on *Nusbaum v. Berlin*, 273 Va. 385, 641 S.E.2d 494 (2007), the landlord asserts that counsel was required to additionally ask the court for a ruling in accord with those

3

objections. We disagree and find *Nusbaum* distinguishable. In that case, we held that an

argument was defaulted because, first, at the time counsel made a general objection, the court

had not ruled on the due process question raised on appeal, and, second, counsel "actually stated,

on more than one occasion, that he was not asking the court to reconsider any ruling." *Id*. at

403-05, 641 S.E.2d at 503-05. It was this unusual combination of circumstances that led us to

conclude that the arguments made on appeal were defaulted. Those circumstances are not

present in this case.[4]

II.     EFFECT OF CODE § 8.01-226.12 ON A LANDLORD'S COMMON LAW DUTIES.

Code § 8.01-226.12 is captioned "[d]uty of landlord and managing agent with respect to

visible mold." Subsection A of the statute contains a number of definitions. The remainder of

the statute sets forth some obligations and immunities for landlords and managing agents when

visible mold occurs. It provides as follows:

> B. Neither the landlord nor the managing agent shall be liable for
> civil damages in any personal injury or wrongful death action
> brought by a tenant, authorized occupant, or guest or invitee for
> exposure to mold arising from the condition within the interior of a
> dwelling unit, or for any property damage claims arising out of the
> landlord-tenant relationship, if the mold condition is caused solely
> by the negligence of the tenant.
>
> C. A managing agent with no maintenance responsibilities shall
> not be liable for civil damages in any personal injury or wrongful
> death action brought by the tenant, authorized occupant, or guest or
> invitee for exposure to mold, or for any property damage claims

---

[4] Preservation of an issue for appellate review is a context specific exercise. For example, objections to the admission of the evidence must be made when the evidence is offered for admission. *Bitar v. Rahman*, 272 Va. 130, 140-41, 630 S.E.2d 319, 325 (2006). And some objections require counsel to ask for corrective action. *See, e.g.*, *Maxwell v. Commonwealth*, 287 Va. 258, 267, 754 S.E.2d 516, 520 (2014) ("[I]t is well-established that the Court will not consider a defendant's 'assignments of error alleging that improper remarks were made by [opposing counsel]' unless he 'has made a timely motion for a cautionary instruction or for a mistrial.'" (citation omitted)). In this instance, noting objections on the final order sufficed to preserve the questions of statutory interpretation for our review.

arising out of the residential landlord-tenant relationship, unless the managing agent fails to disclose the existence of a mold condition of which the managing agent has actual knowledge to the landlord and any prospective or actual tenants.

D.  If the written move-in inspection report authorized under Chapter 13 (§ 55-217 et seq.) or 13.2 (§ 55-248.2 et seq.) of Title 55 reflects that there is no visible evidence of mold in areas readily accessible within the interior of the dwelling unit, and the tenant does not object thereto in writing within five days after receiving the report, there shall be a rebuttable presumption that no mold existed at the time of the move-in inspection.

E.  If visible evidence of mold occurs within the dwelling unit, the landlord or managing agent with the maintenance responsibilities shall, exercising ordinary care, perform mold remediation in accordance with professional standards.

F.  The landlord or managing agent with maintenance responsibilities shall comply with any other applicable provisions of law.

This statute operates in conjunction with a part of the VRLTA, Code § 55-248.11:2.  That statute provides:

As part of the written report of the move-in inspection required by § 55-248.11:1, the landlord shall disclose whether there is any visible evidence of mold in areas readily accessible within the interior of the dwelling unit.  If the landlord's written disclosure states that there is no visible evidence of mold in the dwelling unit, this written statement shall be deemed correct unless the tenant objects thereto in writing within five days after receiving the report.  If the landlord's written disclosure states that there is visible evidence of mold in the dwelling unit, the tenant shall have the option to terminate the tenancy and not take possession or remain in possession of the dwelling unit.  If the tenant requests to take possession, or remain in possession, of the dwelling unit, notwithstanding the presence of visible evidence of mold, the landlord shall promptly remediate the mold condition but in no event later than five business days thereafter and re-inspect the dwelling unit to confirm there is no visible evidence of mold in the dwelling unit and reflect on a new report that there is no visible evidence of mold in the dwelling unit upon re-inspection.

By statute, "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force . . . and be the rule of decision, except as altered by the General Assembly." Code § 1-200. In *Wicks v. City of Charlottesville*, 215 Va. 274, 208 S.E.2d 752, (1974), we explained that:

> [The General Assembly] is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.

*Id.* at 276, 208 S.E.2d at 755; *accord Keister v. Keister*, 123 Va. 157, 162, 96 S.E. 315, 317 (1918).

"Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *Chesapeake & Ohio Ry. Co. v. Kinzer*, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965). Furthermore, we recognize that "a statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested." *Herndon v. St. Mary's Hosp., Inc.*, 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003). Accordingly, "[a] statutory change in the common law is limited to that which is expressly stated in the statute or necessarily implied by its language because there is a presumption that no change was intended." *Mitchem v. Counts*, 259 Va. 179, 186, 523 S.E.2d 246, 250 (2000).

"When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule." *Boyd v. Commonwealth*, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988). Statutes are to be read "in conjunction with the common law, giving effect to both unless it clearly appears from express language or by necessary implication that the purpose of [a statute]

6

was to change the common law." *Jenkins v. Mehra*, 281 Va. 37, 44, 704 S.E.2d 577, 581 (2011) (citations and internal quotation marks omitted).

We perceive no intent by the General Assembly to abrogate common law tort liability or immunity beyond the narrow confines of what is plainly expressed in Code § 8.01-226.12. The statute creates new obligations and clarifies existing immunities. Code § 8.01-226.12(B) provides that "if the mold condition is caused solely by the negligence of the tenant," then "[n]either the landlord nor the managing agent shall be liable for civil damages in any personal injury or wrongful death action." It specifies under Code § 8.01-226.12(C) that a managing agent with no responsibilities for maintenance cannot be held liable unless the managing agent has actual knowledge of a mold condition and fails to disclose that condition. Furthermore, Code § 8.01-226.12(E) contemplates that the landlord and/or the managing agent can be held liable for failing to satisfy its statutory obligation to perform proper mold remediation when visible mold has occurred. At common law, the landlord had no such responsibility. *Isbell v. Commercial Inv. Assocs.*, 273 Va. 605, 611, 644 S.E.2d 72, 74 (2007).

The text of Code § 8.01-226.12 does not purport to occupy the field or to abrogate any common law tort actions seeking recovery based on mold exposure. In addition, the canons of statutory construction noted above point strongly against a broad abrogation of common law principles in this subject area. Finally, Code § 8.01-226.12(F) provides that "[t]he landlord or managing agent with maintenance responsibilities shall comply with any other applicable provisions of law" – which would include common law obligations. We conclude, therefore, that Code § 8.01-226.12 does not implicitly repeal or modify any common law causes of action that are beyond the plain language of this statute. Rather, as discussed above, the statute clarifies immunities and creates new obligations for the landlord. Accordingly, we reverse the trial

7

court's decision to dismiss claims III and IV and remand for further proceedings consistent with this opinion.[5]

III. REMAINING ASSIGNMENTS OF ERROR.

The plaintiffs' second and third assignments of error challenge the trial court's interpretation of Code § 8.01-226.12. The second assignment of error provides as follows:

> The Trial Court erred in limiting the cause of action under Va. Code § 8.01-226.12 to the failure of the landlord and/or managing agent to remediate mold conditions to the move-in inspection period, while declaring that the landlord and/or managing agent had no duty to remediate mold which occurs after the move-in inspection even where such mold conditions are caused by the negligence of the landlord/managing agent.

The plaintiff's third assignment of error is that

> The Trial Court erred in declaring that the General Assembly had concluded mold contamination in a tenant unit is not a dangerous condition, and that current laws allow a tenant to reside in such condition with no further responsibility of the landlord/managing agent.

We decline to reach these assignments of error for two reasons. First, viewing the totality of the trial court's wide ranging statements from the bench, in its memorandum opinion, and in several written orders, it is far from obvious that the trial court reached the conclusions that lay at the foundation of these assignments of error. For example, the trial court, in certifying the case for interlocutory appeal, wrote that

> the enactment of Va. Code § 8.01-226.12 was intended by the General Assembly to provide for a direct cause of action for

---

[5] We express no opinion in this interlocutory appeal concerning the merit of the plaintiffs' claims. We simply hold that the enactment of Code § 8.01-226.12 does not abrogate any common law claims that existed prior to the enactment of the statute. We further note that the lease is not part of the record, and, therefore, we are unable to ascertain whether the landlord had any contractual duty, as opposed to a duty arising in tort, to undertake repairs. *See, e.g.*, *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 557-58, 507 S.E.2d 344, 346-47 (1998) (explaining the "source of duty" rule).

8

personal injury and property damage whenever the landlord or the managing agent with maintenance responsibilities failed to remediate visible mold in accordance with codified Professional Standards for Mold Remediation.

Second, we must be mindful that what is before us is not the ultimate resolution of the case but rather an interlocutory appeal of the trial court's dismissal of two counts in the complaint. Assignments of error two and three ask us to reach beyond the limited scope of the interlocutory appeal to address issues that the trial court has not resolved. The trial court should have the opportunity in the first instance to address, if necessary, the issues raised in the plaintiffs' remaining assignments of error.

CONCLUSION

We appreciate the trial court's thoughtful and thorough analysis of a novel question of law. Disagreeing with its legal conclusions, however, we will reverse and remand for further proceedings.

*Reversed and remanded.*

9