PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Lorish
Argued at Richmond, Virginia

ROGER E. MCMILLION, A/K/A
  ROGER E. MCMILLIAN

                                             OPINION BY
v.     Record No. 0492-23-2            JUDGE RANDOLPH A. BEALES
                                          JULY 23, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

John B. Mann for appellant.

(Stacey T. Davenport, Commonwealth's Attorney; Alexander C.
Angle, Assistant Commonwealth's Attorney, on brief), for appellee.

The Commonwealth filed a pleading to obtain $35,293 that was seized from Roger

McMillian's property.[1] While McMillian filed six answers in response to the Commonwealth's

filing, the circuit court found that McMillian was in default because he did not file an answer that

provided "the exact right, title or character of the ownership or interest in the property and the

evidence thereof." Code § 19.2-386.9(ii). On appeal, McMillian challenges the circuit court's

decision to hold him in default and to forfeit the seized money to the Commonwealth. McMillian

also argues that the circuit court erred by failing to grant his motion to compel discovery.

---

[1] While many of the circuit court's orders refer to the appellant as "McMillion," the appellant has consistently spelled his name as "McMillian" in his pleadings below and in his brief before this Court now on appeal. Consequently, we will refer to the appellant by the name that he uses throughout the course of this lawsuit.

I.  BACKGROUND

Chesterfield County police officers seized $35,293 from 101 Ruthers Road in Chesterfield where McMillian operates his business, Expert Bumpers.[2]  McMillian was arrested and charged with possession of a Schedule I/II controlled substance.  After arresting McMillian, the Commonwealth filed an "Information for Forfeiture" in the circuit court on July 30, 2020, which states that the $35,293 was seized "as items used in substantial connection to a felonious event involving a Schedule I/II controlled substance."  The Commonwealth's pleading identified Charles Wilmouth, Rebecca Nowell, and McMillian as the potential owners of the seized money, and the Commonwealth sent each potential owner a "Notice of Seizure for Forfeiture."

McMillian filed his first answer to the Commonwealth's Information on August 17, 2020, where he stated, "The funds are legitimate proceeds from transactions completed in the regular course of business with the body shop operated by/with his brother."[3]  The circuit court stayed the proceedings until McMillian's criminal trial concluded, which ultimately resulted in McMillian being convicted of possession of a Schedule I/II controlled substance.  The circuit court then lifted the stay, and it ordered McMillian to file another answer to the Commonwealth's Information.

McMillian went on to file five more answers to the Commonwealth's Information.  In his sixth and final answer, McMillian stated, "The funds in question are legitimate proceeds from transactions completed in the regular course of business in the body shop known a[s] Expert

---

[2] The record now before us on appeal also lists this address as McMillian's primary address.

[3] Nowell and Wilmouth never responded to the Commonwealth's Information, and the circuit court held both of them in default.  Wilmouth was convicted of possession of a Schedule I/II controlled substance with the intent to distribute under Code § 18.2-248(C).

Bumpers operated by Roger McMillian with Roger McMillian's brother." McMillian's answer then stated:

> The following is a list of items that Roger McMillian sold prior to the seizure and that represent a portion of the proceeds from legitimate business transactions in part:
>
> 2003 Chevy 3500 Express Van - $4,000
> 2 Carports size 18 x 20 - $2,000
> Aboveground aluminum pool, size 24 x 24 - $7,500
> Shed, size 10 x 15 - $2,000
> 1980 23ft AquaSport with 2007 Venture aluminum trailer - $7,500
> 1978 Chevy Camaro - $3,000
> 1987 Ford Mustang GT - $5,000
> TOTAL - $31,000
> The remaining funds represent proceeds received from customers of the business.

In short, McMillian maintained that $31,000 of the $35,293 in cash came from seven different transactions. He also maintained that the remaining cash ($4,293) came from customers of the body shop at that same address who had paid for the work done on their vehicles, presumably in cash.

McMillian signed his answer. The Commonwealth filed a motion for default, and argued, "To date, respondent Roger E. McMillion has filed a total of six purported answers, none of which comply with Virginia Code § 19.2-386.1 *et seq.*" After a hearing on the Commonwealth's motion for default, the circuit court found that "McMillian had not provided evidence sufficient to satisfy the requirements of Code § 19.2-386.3(B) and held McMillian in default."[4] The circuit court wrote, "Respondent McMillian asserted that his sworn answer is all that is required to avoid a default. The Court disagrees." The court then stated, "[T]he sworn

---

[4] The circuit court relied on Code § 19.2-386.3 in its order determining that McMillian's answer was insufficient. As discussed *infra*, Code § 19.2-386.3(B) describes what the Commonwealth must put in its notice sent to defendants whose property is subject to forfeiture, while Code § 19.2-386.9 describes what a defendant or property owner must include in an answer in a forfeiture proceeding. Both statutes contain the same text that is relevant to this appeal.

answer must include all the statutorily required elements to include 'and the evidence thereof.'

To hold otherwise renders the specifically described information required in subparagraph (ii)

'and the evidence thereof' statutory surplusage without effect." The circuit court explained:

> At a minimum in this instance, Respondent McMillian should have — but did not — advance a reason why he could not identify any of his own evidentiary sources forming the basis for his sworn claim made on 15 March 2022 that the $35,293.00 cash seized two years earlier on 7 May 2020 is the result of business transactions for a body shop he and his brother own ("Expert Bumpers") and for the specific dollar amounts listed for seven items purportedly sold as set out in paragraph F of his Second Supplemental Response totaling $31,000.00. Respondent McMillian described no evidence at all; not a check register, accounting ledger, invoice, bank statement, tax return, bill of sale, vehicle registration or DMV record, photograph or third-party statement of any kind or sort.

McMillian was held in default, and the circuit court entered a final order forfeiting the $35,293 to

the Commonwealth without holding a trial. McMillian now appeals to this Court.

## II. ANALYSIS

In his first assignment of error, McMillian argues, "The Circuit Court erred when it

granted the Commonwealth's motion for default and entered a default judgment forfeiting the

property of Roger McMillian to the Commonwealth." This appeal requires us to interpret the

statutory requirements for filing an answer in a civil asset forfeiture proceeding, and "[q]uestions

of statutory interpretation are reviewed de novo." *Sarafin v. Commonwealth*, 288 Va. 320, 325

(2014).

When interpreting a statute, the Supreme Court has stated, "[W]e must . . . assume that

the legislature chose, with care, the words it used when it enacted the relevant statute, and we are

bound by those words as we interpret the statute." *Commonwealth v. Delaune*, 302 Va. 644, 655

(2023) (quoting *Supinger v. Stakes*, 255 Va. 198, 206 (1998)). "In construing statutory language,

we are bound by the plain meaning of clear and unambiguous language." *White Dog Publ'g,*

*Inc. v. Culpeper Cnty. Bd. of Supervisors*, 272 Va. 377, 386 (2015). "Where the General

Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." *Couplin v. Payne*, 270 Va. 129, 137 (2005) (quoting *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313 (2005)).

Code § 19.2-386.22 authorizes the Commonwealth to seize money "used in substantial connection with (a) the illegal manufacture, sale or distribution of controlled substances or possession with intent to sell or distribute controlled substances." Code § 19.2-386.22(A)(i). "[I]f the Commonwealth wishes to obtain title to property through the forfeiture provisions of Code §§ 19.2-386.1 through -386.14, it must file an information for forfeiture within 90 days of the date it physically takes the property into its possession." *Commonwealth v. Brunson*, 248 Va. 347, 353 (1994); Code § 19.2-386.3(A). The information must (among other things) "ask that all persons concerned or interested be notified to appear and show cause why such property should not be forfeited." Code § 19.2-386.1(B)(e). After being notified about the forfeiture proceedings, a property owner must make an appearance in the matter within 30 days, or else the owner "shall be in default." Code § 19.2-386.10(A); *see also* Code § 19.2-386.9. Code § 19.2-386.9 states:

> Such appearance shall be by answer, under oath, which shall clearly set forth (i) the nature of the defendant's claim; (ii) the exact right, title or character of the ownership or interest in the property and the evidence thereof; and (iii) the reason, cause, exemption or defense he may have against the forfeiture of the property.

"If any party defendant appears in accordance with § 19.2-386.9, the court shall proceed to trial of the case." Code § 19.2-386.10(A). "At trial, the Commonwealth has the burden of proving by clear and convincing evidence that the property is subject to forfeiture under this chapter." *Id.*

In this case, McMillian timely filed six separate answers to the Commonwealth's information for forfeiture, yet the circuit court found that McMillian was in default. McMillian's final sworn answer listed $31,000 of the seized cash at issue here as proceeds that came from

seven specific business transactions and stated that the remaining $4,293 came from various payments by customers for work done on their vehicles in McMillian's body shop. However, the circuit court still found that McMillian's answer failed to provide "the exact right, title or character of the ownership or interest in the property *and the evidence thereof*." Code § 19.2-386.9(ii) (emphasis added); Code § 19.2-386.3(B)(ii). Specifically, the circuit court stated, "Respondent McMillian asserted that his sworn answer is all that is required to avoid a default. The Court disagrees." Instead, the circuit court interpreted the statute as requiring McMillian to specifically describe or produce (in addition to his sworn answer) evidence such as "a check register, accounting ledger, invoice, bank statement" to avoid falling into default. After finding that McMillian was in default, the circuit court then entered an order that forfeited all $35,293 to the Commonwealth without holding a trial.

Contrary to the circuit court's interpretation of the statute, Code § 19.2-386.9(ii) does not require McMillian to provide the circuit court with "a check register, accounting ledger, invoice, bank statement, tax return, bill of sale, vehicle registration or DMV record, photograph or third-party statement of any kind or sort" in addition to his sworn answer. The examples of evidence listed by the circuit court all constitute *exhibits*, but exhibits are only one type of evidence that a litigant may use to ultimately prove his case at trial. While the use of an exhibit at trial may assist the finder of fact to determine whether McMillian actually has the ownership interest that he alleges, McMillian was not required to provide everything that he could put on at trial in his pleadings at this stage of the litigation. Instead, McMillian needed only to provide his own allegations in response to the Commonwealth's pleading – which would then lead to a trial. Notably, at common law, "[i]t is an elementary rule in pleading, that, when a state of facts is relied on, it is enough to allege it simply, without setting out the subordinate facts which are the means of producing it, or the evidence sustaining the allegation." *Williams v. Wilcox*, 8 AD. &

E. 314, 331, 112 Eng. Rep. 857, 863 (K.B. 1838); *see also* Code § 1-200; *Cherry v. Lawson Realty Corp.*, 295 Va. 369, 376 (2018) ("Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." (quoting *Chesapeake & Ohio Ry. Co. v. Kinzer*, 206 Va. 175, 181 (1965))). We cannot say that Code § 19.2-386.9 requires litigants to identify or put forth all of their evidence at the pleading stage of a civil asset forfeiture proceeding.

In addition, a plain reading of the text of Code § 19.2-386.9 shows that the sworn statements that McMillian made in his sworn answer provided "the evidence thereof" required by the statute. Code § 19.2-386.9 states that a property owner's "appearance shall be by answer, under oath," and that sworn answer "shall clearly set forth . . . the exact right, title or character of the ownership or interest in the property and the evidence thereof." Code § 19.2-386.9(ii). The plain and ordinary meaning of "set forth" simply means "to give an account or statement of," or to explain or describe something. *Set forth*, *Webster's Third New International Dictionary* (1981); *see also Series-Qualifier Canon*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series."). Consequently, based on a plain reading of the text of Code § 19.2-386.9(ii), a litigant must give a statement of his ownership interest in the property and then give a statement of the evidence of that ownership interest. Indeed, the statute does not require the litigant to actually *produce* any of the evidence of his ownership interest at this point in the proceedings, or to describe in detail every document that may be relevant to the same, as this is merely the preliminary pleading stage.

Here, McMillian provided both "the exact right, title or character of the ownership or interest in the property" and "the evidence thereof" in his sworn answer. Code § 19.2-386.9(ii).

- 7 -

McMillian described his ownership interest when he stated that "[t]he funds in question are legitimate proceeds from transactions completed in the regular course of business in the body shop." This statement showed McMillian's claim that he – rather than his codefendants Nowell and Wilmouth – owned the seized money. McMillian also then provided some evidence of that ownership interest when he provided a list of seven separate transactions associated with his business for a total of at least $31,000 of the cash seized.[5] Consequently, McMillian's final answer, while not an exemplary answer, complied with the basics of both requirements of Code § 19.2-386.9(ii) – stating (1) his ownership interest in the property at issue and (2) some evidence of that ownership interest. The circuit court erred in finding otherwise.

### III. CONCLUSION

In short, the circuit court erred when it determined that a defendant, in his answer in a civil asset forfeiture case, must provide additional evidence of his ownership interest in the seized property beyond the defendant's sworn statement setting forth facts that support the defendant's claim of ownership. While a defendant must provide "the exact right, title or character of the ownership or interest in the property and the evidence thereof" in his answer, the defendant may do so solely through his sworn statements in the answer itself. McMillian complied with both requirements of Code § 19.2-386.9(ii) by (1) stating his ownership interest of all of the seized money and then by (2) providing sworn statements in his answer regarding the business transactions that produced that cash – as evidence of his ownership interest. Consequently, the circuit court erred when it found that McMillian failed to file a statutorily compliant answer, and it erred by holding McMillian in default and in not allowing the case to go to trial.

---

[5] Now that this matter is past the pleadings stage, both parties will have the opportunity to conduct discovery to obtain additional information and details from the other party about what evidence will be presented at trial.

Therefore, for all of these reasons, we reverse the circuit court's decision to hold McMillian in default – and its decision that McMillian would have to forfeit the seized $35,293 in cash to the Commonwealth. Furthermore, we remand this case back to the circuit court for it to hold a trial on the merits of the forfeiture of these assets if the Commonwealth wishes to so proceed to trial.[6]

*Reversed and remanded.*

---

[6] McMillian also assigned error to the circuit court's decision to deny his motion to compel discovery from the Commonwealth. We do not reach this assignment of error in this appeal because we are reversing the circuit court's decision that ended this case at the pleadings stage. Furthermore, we are remanding this case back to the circuit court for the parties to conduct discovery and to hold a trial on the merits if the Commonwealth wishes to so proceed to trial.