# COURT OF APPEALS OF VIRGINIA

## Record No. 0501-25-4

BELAAL KHAN

v.

CYNTHIA MCALISTER, IN HER PERSONAL AND INDIVIDUAL CAPACITY

Present: Judges Beales, Raphael and Bernhard

Argued at Arlington, Virginia

Opinion Issued May 5, 2026

### FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Annette Kay Rubin (Law Office of Annette Rubin, on briefs), for appellant.

Laurie L. Kirkland (Ian J. McElhaney; Blankingship & Keith, P.C., on brief), for appellee.

### PUBLISHED OPINION BY
### <u>JUDGE DAVID BERNHARD</u>

Belaal Khan challenges the circuit court's decision to sustain the demurrer and plea in bar to his complaint against Cynthia McAlister, in her individual capacity, under the Virginia Human Rights Act (the "VHRA"), alleging unlawful discriminatory conduct in her failure to accommodate Khan's disability while she was serving as Chief of Police for the Town of Purcellville. This Court resolves the appeal on the demurrer, addressing the question of first impression whether McAlister, in her individual capacity, constitutes an "employer" under Code § 2.2-3905.1, defined as "any person, or agent of such person, employing more than five employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."

Under the plain reading of the statute, McAlister does not independently qualify as an employer, a person employing more than five employees, which leaves for consideration whether

she qualifies derivatively as an "agent of such person." The principal textual question is whether the "agent" language extends personal liability to individual employees. Examining the text and statutory context, we conclude the General Assembly intended only to establish respondeat superior liability.

Because McAlister is neither Khan's employer nor an agent of the employer in her individual capacity, the circuit court correctly sustained the demurrer. Consequently, the judgment of the circuit court is affirmed.[1]

BACKGROUND[2]

Khan brought this action on December 13, 2024. According to the complaint, Khan applied to the Town of Purcellville for a police officer position and later performed a fitness for duty examination, revealing his "unusual" visual acuity score.[3] The Town accepted Khan's score "as is" and hired him as a police officer trainee on June 23, 2022. Khan graduated from the police academy and completed over 200 hours of field training, consistent with the

---

[1] This Court leaves for another day the issues raised in the plea in bar, namely whether the VHRA mandates administrative exhaustion or imposes a limitations period following receipt of a federal right-to-sue notice. Notably, however, as appellee's counsel conceded at oral argument, the statutory construction arguments made before the circuit court concern substantive amendments that became effective July 1, 2024. 2024 Va. Acts ch. 819; 2024 Va. Acts ch. 784. With no language expressly granting retroactive application, the amendments likely do not apply to the instant case. *See Taylor v. Commonwealth*, 44 Va. App. 179, 184 (2004).

Further, the parties noted below that Khan's two prior VHRA actions—one against the Town and a second against Chief McAlister in her "official capacity"—were both dismissed based on sovereign immunity. Although a panel of this Court ruled in an unpublished case that the General Assembly did not waive sovereign immunity in the VHRA, *Fogleman v. Commonwealth*, No. 0841-22-2, slip op. at 5-8, 2023 Va. App. LEXIS 627, at *9-18 (Sept. 19, 2023), that question is not presented here. Neither the demurrer nor the plea in bar asserted that McAlister in her individual capacity partook in the Town's sovereign immunity.

[2] On appeal, this Court accepts as true the well-pleaded facts alleged in the complaint, including reasonable inferences drawn therefrom, and applies the same "presumption of correctness" to undisputed facts challenged by the plea in bar. *See Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 522 (2023).

[3] The complaint does not admit Khan's actual visual acuity score.

certification requirements to become a law enforcement officer. During field training, "[none] of the [supervising] officers expressed any safety concerns to Khan, noted any deficiencies in his performance, or altered their training practices and standards for him."

The complaint alleges that in February 2023, McAlister discontinued Khan's field training due to his acuity measure and reassigned him to administrative roles. Khan emailed McAlister on April 23, 2023, explaining he had "[informally] learned that his vision may be a factor" in his removal. He named two ophthalmologists deeming his "visual acuity to be within acceptable limits" per the law enforcement requirements. Finally, he asked to return to "active field duty with his vision 'as is,' the same as when he was hired," as a reasonable accommodation under the Americans with Disabilities Act (the "ADA"). The email went unanswered. On May 18, 2023, Khan sent McAlister a formal memo reiterating the contents of the email, including his accommodation request.[4] McAlister ordered Khan to report for an eye examination on July 24, 2023.

On or about August 11, 2023, McAlister advised Khan that "he was not going back on the road" and instead, proposed an alternative administrative position. She assigned him the role while granting 30 days to schedule a follow-up eye examination. Khan was ultimately terminated on September 20, 2023. The termination memo discussed Khan's vision issues but stated he was terminated for his performance over the past 30 days.[5]

---

[4] Whether Khan's request to return to field duty constitutes a permissible reasonable accommodation request under the statute is not before the Court.

[5] The complaint alleges on August 25, 2023, Khan emailed his supervising officer, expressing "disappointment . . . and concerns about being forced into an administrative position." Four days later, Chief McAlister issued Khan an oral reprimand via written notice. The notice admonished Khan for his failure to submit daily reports and use of sick leave and charged him with "insubordination" and "conduct unbecoming" for his August 25th email.

The complaint provides additional factual allegations under its section titled "Gross Negligence."[6] "McAlister and senior staff treated Khan with open contempt and hostility after his requests for accommodation." McAlister referred to Khan as "legally blind" and a "liability," despite instructing him to drive a small utility vehicle during a Fourth of July parade and dual-wheeled trucks on occasion. Further, "[i]n response to Khan's protests about being denied accommodation, McAlister simply told Khan that he was being 'disrespectful' and that he could resign." She "advised Khan to stop talking with 'street lawyers'" and once told him he was "'acting like a fool,' and having a 'hissy fit,'" among other things.

The complaint alleges McAlister abused her authority and violated the VHRA by:

> (1) Refusing to provide a reasonable accommodation to the known physical impairments of an otherwise qualified person with a disability; and (2) Taking adverse action against an employee who requests or uses a reasonable accommodation in retaliation for such request; and (3) Denying employment or promotion opportunities to an otherwise qualified employee because such employer will be required to make reasonable accommodation for a person with a disability; and (4) Failing to engage in a timely, good faith interactive process with an employee who has requested an accommodation in writing.

McAlister responded by demurrer and plea in bar on January 7, 2025. The demurrer argues McAlister does not meet the "employer" definition in Code § 2.2-3905 because she does not individually employ five or more persons or one or more domestic workers. Likewise, for definitions containing the phrase, "agent of such person," *see* Code § 2.2-3905 and Code § 2.2-3905.1(A), McAlister avers that "[federal] courts have rejected any interpretation . . . purport[ing] to authorize a direct claim against an individual under the VHRA."

---

[6] While the complaint alleges McAlister's actions against Khan constitute gross negligence and willful misconduct, it states, "This case is brought under the Virginia Human Rights Act, Code § 2.2-3901 *et seq*." Accordingly, the Court treats the complaint as asserting only VHRA claims.

The plea in bar asserts two separate bars to recovery. First, it contends Khan failed to timely exhaust administrative remedies against McAlister within 300 days of the alleged discrimination, *see* Code § 2.2-3907(A), because the complaint filed with the Office of Civil Rights of the Department of Law (the "OCR") identifies the Purcellville Police Department as Khan's employer. Second, it construes Code § 2.2-3907(I) to plainly mean "a person aggrieved by a violation of the VHRA may commence a civil action only if he files within 90 days of his receipt of a notice of his right to file a civil action," and courts "shall accept a notice of right to sue issued by the [Equal Employment Opportunity Commission (the "EEOC")] as a notice of a right to file a civil action." Khan's action, according to the plea in bar, is purportedly time-barred because he filed suit 245 days from the date of the EEOC notice (April 12, 2024).

Attached to the defensive pleadings were three supporting exhibits. The first, entitled "Declaration from Annette Rubin,"[7] outlines relevant dates respecting administrative exhaustion, which are not in dispute here. Khan submitted his complaint to the OCR on November 16, 2023. The case was transferred to the EEOC on December 15, 2023. Rubin contacted the OCR for a right-to-sue notice on April 11, 2024. The EEOC issued Khan a federal notice the next day.[8] Seeking a right-to-sue notice from the OCR directly, Rubin emailed the office on May 1, 2024. The record indicates no reply from the OCR. The second and third documents comprise the EEOC notice and Khan's OCR complaint. Defense counsel filed a supporting memorandum on February 7, 2025, with the same exhibits.

Khan filed a response on February 14, 2025. The response concedes the dismissal of similar actions—against the Town and McAlister, in her official capacity—because of sovereign

---

[7] Rubin represents Khan in this appeal and served as his trial attorney in the lower court.

[8] The notice grants Khan the "right to institute a civil action against the [Purcellville Police Department] under Title I of the [ADA]" within 90 days of receipt.

immunity. It argues that common law permits suits against public officials in their individual capacities if a plaintiff can establish gross negligence.[9] On the demurrer issue, it submits the statute does not define "person," "employing," or "agent." Accepting the definitions found in Virginia's labor and employment code, which describe employment relationships "in terms of controlling the work of another," McAlister was allegedly Khan's employer because she had plenary control over the employment decisions for the entire department. As to the plea in bar arguments, the response maintains that administrative remedies "are phrased as permissive" under the statute and a right-to-sue notice from the EEOC addressing federal claims cannot trigger a filing deadline under the VHRA.

At the hearing on February 21, 2025, the circuit court announced it would adopt all of defense counsel's arguments and sustain the demurrer and plea in bar. Specifically, the court stated, "the suit in the personal capacity of the chief is an improper suit. It doesn't fall within the definition of employer under the [VHRA]"; "there was indeed a failure to give timely notice" as required; and "I also agree with . . . the requirement to exhaust remedies." The court issued a final order on February 21, 2025, sustaining the demurrer, granting the plea in bar, and dismissing Khan's complaint with prejudice. Khan appealed.

ANALYSIS

This Court reviews de novo a circuit court's decision to sustain a demurrer. *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 527 (2023). Pure questions of law, including issues of statutory interpretation, are likewise reviewed de novo. *VACORP v. Young*, 298 Va. 490, 494 (2020).

---

[9] The response states, "individual supervisors are not properly considered employers under Title VII."

The demurrer presents the novel question whether McAlister, in her individual capacity, meets the definition of "employer" under Code § 2.2-3905.1.[10]

"When construing a statute, [this Court's] primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012). We assume "the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." *Jennings v. Commonwealth*, 82 Va. App. 692, 697 (2024) (en banc) (quoting *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 153 (1992)). "[If] the language of the statute 'is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.'" *Cuccinelli*, 283 Va. at 425 (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "The plain, obvious, and rational meaning . . . is to be preferred over any curious, narrow, or strained construction." *Ford Motor Co. v. Gordon*, 281 Va. 543, 549 (2011) (citing *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007)). Finally, if the language of a statute is ambiguous, rules of statutory construction and legislative history govern. *See Doss v. Jamco, Inc.*, 254 Va. 362, 370 (1997).

The VHRA underwent significant amendments in 2020 to prohibit unlawful discrimination in employment, public accommodation, and other areas on the basis of protected characteristics. 2020 Va. Acts ch. 1137. The next year, the General Assembly added Code

---

[10] The "Claim" section of Khan's complaint recites almost verbatim the unlawful discriminatory conduct outlined in Code § 2.2-3905.1, entitled "Reasonable accommodations for persons with disabilities; unlawful discriminatory practice; notice of rights." Therefore, this Court applies the subsection's definition of "employer" to resolve the demurrer question. Further, based on the plea in bar arguments, the parties likely argued the demurrer under the incorrect statute, amended in 2024. Applying the correct earlier version, however, does not affect our analysis because Code § 2.2-3905.1 was enacted in 2021 without any subsequent amendments.

§ 2.2-3905.1, increasing protections against disability discrimination.  2021 Va. Acts ch. 12.  The

subsection reads, in pertinent part,

> It shall be an *unlawful discriminatory practice* for *an employer* to:
>
> 1. Refuse to make reasonable accommodation to the known physical and mental impairments of an otherwise qualified person with a disability, if necessary to assist such person in performing a particular job, *unless the employer can demonstrate that the accommodation would impose an undue hardship* on the employer. In determining whether an accommodation would constitute an undue hardship upon the employer, the following shall be considered:
>
>> a. Hardship on the conduct of the employer's business, considering the nature of the employer's operation, including composition and structure of the employer's workforce;
>>
>> b. Size of the facility where employment occurs;
>>
>> c. The nature and cost of the accommodations needed, taking into account alternative sources of funding or technical assistance included under § 51.5-173;
>>
>> d. The possibility that the same accommodations may be used by other prospective employees; and
>>
>> e. Safety and health considerations of the person with a disability, other employees, and the public.
>
> 2. Take adverse action against an employee who requests or uses a reasonable accommodation pursuant to this section.
>
> 3. Deny employment or promotion opportunities to an otherwise qualified applicant or employee because such employer will be required to make reasonable accommodation for a person with a disability.
>
> 4. Require an employee to take leave if another reasonable accommodation can be provided to the known limitations related to the disability.
>
> 5. Fail to engage in a timely, good faith interactive process with an employee who has requested an accommodation pursuant to this section to determine if the requested accommodation is reasonable and, if such accommodation is determined not to be reasonable, discuss alternative accommodations that may be provided.

Code § 2.2-3905.1 (emphases added). It also imposes notice requirements: "An employer shall post in a conspicuous location and include in any employee handbook information concerning an employee's rights to reasonable accommodation for disabilities." *Id.* Code § 2.2-3905.1 defines "employer" as "any person, or agent of such person, employing more than five employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."

The parties' arguments are as follows: McAlister contends Khan failed to state a proper claim because she is not an "employer" under the statute. Considering another subsection's definition, McAlister claims she did not employ five or more persons, including Khan, as the Town's Chief of Police.[11] She tacitly argues the ordinary definition of the term "employer," that is, to provide a job with compensation.[12] For definitions containing the phrase "agent of such person," McAlister submits that courts have rejected the argument that an employee-supervisor's vested power to hire qualifies her as an employer. McAlister also endorses the "[circuit court's] reliance on the interpretation of a substantially similar definition of 'employer'" found in Title VII of the Civil Rights Act of 1964 ("Title VII") and the ADA, citing a presumption of construction under Virginia law.[13]

---

[11] Appellee states, "On the contrary, . . . Khan expressly alleged in his Complaint that he had applied for a position with the Town of Purcellville; that the Town hired him as a police officer trainee; and, that, until his termination, he remained employed with the Town."

[12] *See Employ*, Merriam-Webster, https://www.merriam-webster.com/dictionary/employ (last visited Mar. 13, 2026) ("[T]o provide with a job that pays wages or a salary").

[13] "When the General Assembly adopts language substantially similar to that of another jurisdiction's regulation, a presumption arises that the legislature also intended to adopt the prior interpretation placed upon the language by the promulgating authority." *Va. Dep't of Labor & Indus. v. Westmoreland Coal Co.*, 233 Va. 97, 104 (1987) (citing *Commonwealth v. Huntington*, 148 Va. 97, 116 (1927)).

Conversely, Khan contends the Supreme Court of Virginia has "unambiguously recognized" individual supervisors as de facto employers at common law, namely under wrongful discharge claims. Citing *Cherry v. Lawson Realty Corp.*, 295 Va. 369 (2018), Khan claims the General Assembly "is presumed to have known [this] . . . and the [VHRA] must therefore be read along with the provisions of the common law" unless the statute declares otherwise. Khan further claims McAlister satisfies the definition of "employer" found in other Code sections, due to her exclusive control over Khan's employment.[14]

This Court concludes that Code § 2.2-3905.1 classifies the "employer" as any person employing more than five employees. The plain meaning constrains the text to the actual employer, consistent with the General Assembly's apparent intention to determine employer status based on the workforce size and to exclude certain small employers. Accordingly, McAlister does not independently qualify as an employer under the subsection. This leaves the derivative "agent" claim. Given the nature of this suit, the textual question here is whether the phrase "agent of such person" authorizes personal suits against individual employees.[15]

Considering the text, two reasons foreclose a construction that includes personal liability. First, applying the structural reading, the "agent" language signifies the employer cannot evade suit by acting through its agents. Moreover, although agents can be sued individually for certain tortious conduct at common law, and although Khan asserts that McAlister's alleged failure to accommodate his disability constitutes gross negligence, Khan's complaint expressly states the "case is brought under the [VHRA]." Significantly, Khan's claims invoke reasonable disability

---

[14] The brief states, "§ 40.1-2 provides the following definitions; 'Employer' means an individual . . . operating within this Commonwealth who employs another to work for wages . . . [and] 'Employ' shall include to permit or suffer to work."

[15] For purposes of analysis, we assume without deciding the Town satisfies the independent definition of "employer."

accommodation requirements, which are purely statutory rights. Thus, Khan's reliance on the *Cherry* decision, interpreting statutory language created in derogation of the common law, is inapposite. We are therefore not required to read into the definition de facto employer liability.

Next, surrounding words in the statute reinforce the view that "agent" is not synonymous with "employee" or "manager." Code § 2.2-3904, enacted one year prior to Code § 2.2-3905.1, requires "[n]ondiscrimination in places of public accommodation," stating, in relevant part,

> It is an unlawful discriminatory practice for *any person, including the owner, lessee, proprietor, manager, superintendent, agent, or employee* of any place of public accommodation, to refuse, withhold from, or deny any individual, or to attempt to refuse, withhold from, or deny any individual, directly or indirectly, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation . . . on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, sexual orientation, gender identity, marital status, disability, or military status.

Code § 2.2-3904 (emphasis added).[16] This subsection directs its prohibitions to certain individual roles, in contrast with the subsection at issue, which addresses unlawful discriminatory conduct by the "employer." Viewed in context, the distinction signals a deliberate choice by the General Assembly to limit individual liability for disability reasonable accommodation claims. This Court thus concludes that the "agent" language in Code § 2.2-3905.1 imposes only respondeat superior liability.[17]

---

[16] The excerpt shown constitutes the 2023 version of the statutory language; the subsection was amended in 2024 to include "ethnic" origin as a protected characteristic. 2024 Va. Acts ch. 266; 2024 Va. Acts ch. 334.

[17] This construction parallels the interpretation of the same definition under the ADA. The statute defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A). Federal courts construing the "agent" clause have consistently held that it does not subject individuals to personal liability. *See Yerdon v. Poitras*, 120 F.4th 1150, 1156 (2d Cir. 2024) ("Perhaps not surprisingly, at least six of our sister circuits have reached the same conclusion—that Title I does not permit suits against individual employees."); *Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45, 51-52 (1st Cir. 2011) (construing the "employer" definitions under the ADA and

- 11 -

CONCLUSION

For the reasons stated, this Court holds the "employer" definition in Code § 2.2-3905.1 permits claims against the qualifying institutional employer and their agent in the respondeat superior context. Because McAlister is neither Khan's employer nor an agent of the employer in her individual capacity, the circuit court correctly sustained the demurrer. The judgment of the circuit court is affirmed.

*Affirmed.*

---

Title VII alike, when considering the statute's remedial scheme and exemption for small entities, Congress did not intend to impose "liability against individuals who are not themselves employers"); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007); *EEOC v. AIC Sec. Investigations*, 55 F.3d 1276, 1279 (7th Cir. 1995).